JUDGE ENGELMAYER

14 CV 5902

John A.V. Nicoletti
Nooshin Namazi
Kevin J.B. O'Malley
NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff*
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
(212) 220-3830

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



| | |
|---|---|
| AGCS MARINE INSURANCE COMPANY, | |
| Plaintiff, | |
| vs. | |
| WORLD FUEL SERVICES, INC. and WORLD FUEL SERVICES EUROPE, LTD., | **COMPLAINT** |
| Defendants. | |

Plaintiff AGCS Marine Insurance Company, by and through its attorneys, as and for its Complaint against Defendants World Fuel Services, Inc. and World Fuel Services Europe, Ltd., alleges the following upon information and belief:

### PARTIES

1.      Plaintiff AGCS Marine Insurance Company is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois with a principal place of business in the State of Illinois.

2.      AGCS is an insurance company that is licensed to do business in the State of New York as a foreign insurer.

3.      Defendant World Fuel Services, Inc. is a corporation duly organized and existing under and by virtue of the laws of the State of Texas with a principal place of business in the State of Florida.

4.      World Fuel Services, Inc. is registered to do business in the State of New York as a foreign business corporation.

5.      Defendant World Fuel Services Europe, Ltd. is a business entity duly organized and existing under and by virtue of the laws of a foreign state with a principal place of business in a foreign state and, therefore, a citizen or subject of a foreign state.

6.      World Fuel Services Europe is registered to do business in the State of New York as a foreign business corporation.

7.      World Fuel Services Europe is a subsidiary and/or an affiliate of World Fuel Services, Inc., and they are collectively referred to herein as "World Fuel."

## JURISDICTION AND VENUE

8.      The following issues constitute questions of insurance coverage under a contract of marine insurance and thereby come within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333 and are maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

9.      This action is filed under and pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

10.     An actual controversy of a justiciable nature exists between AGCS and World Fuel involving the rights and obligations under a contract of marine insurance and, depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court without further suit.

2

11.     Venue is proper in this District because a substantial part of the events giving rise to AGCS' claims herein occurred in this District, including, but not limited to: the solicitation and negotiation of the subject insurance contract; all submissions for the placement of the subject insurance contract were made by corresponding with the Manhattan office of AGCS; the subject insurance contract was bound, signed, issued and delivered in this District; notice of claim was given and the preliminary claim documentation was sent to the Manhattan office of AGCS; and performance of the subject insurance contract (*i.e.*, payment of claims) was to take place in this District.

12.     Venue is also proper in this District because each Defendant is subject to personal jurisdiction in this District.

13.     This Court has personal jurisdiction over World Fuel Services, Inc. under the laws of the State of New York, including N.Y. C.P.L.R. §§ 301 and 302.

14.     This Court has personal jurisdiction over World Fuel Services Europe under the laws of the State of New York, including N.Y. C.P.L.R. §§ 301 and 302.

15.     The following issues are governed by the general maritime law of the United States and, in the absence thereof, by the laws of the State of New York, as that is the state that has the most significant contacts with the subject insurance contract.

## UNDERLYING FACTS – THE INSURANCE CONTRACT

16.     Willis of New York, Inc. was at all relevant times the insurance broker for and the agent of World Fuel.

17.     Willis' office in New York, New York submitted an application on behalf of World Fuel to AGCS' office in New York, New York prior to October 22, 2013 soliciting insurance under an ocean marine cargo policy.

18.    Negotiations in New York between Willis and AGCS for the subject insurance resulted in AGCS binding coverage under the terms and conditions of Marine Open Cargo Policy No. OC 91524500 (the "Policy") on October 22, 2013 by way of a Confirmation of Coverage (the "Binder") signed and issued by AGCS in New York.  The Binder, a copy of which is attached hereto as Exhibit "1," is incorporated herein by reference.

19.    The period of the Policy is continuous until cancelled and coverage would separately attach to each shipment on and after October 1, 2013.

20.    The Binder provides that the policy form is to be "As per the AGCS approved Willis Policy form amended as noted herein."

21.    AGCS signed and issued the agreed policy form (the "Policy Form") for the Policy in New York on February 25, 2014.  The Policy Form, a copy of which is attached hereto as Exhibit "2," is incorporated herein by reference.

22.    The default all risks coverage for shipments of bulk liquids by vessel, under both the Binder and the Policy Form, provides coverage "from time of leaving tanks at port of shipment and while in transit and/or awaiting transit and until safely delivered in tanks at destination."

23.    The Policy Form contains the following terms and conditions, among others:

6.    **GEOGRAPHICAL LIMITS:**

This policy covers all goods and/or merchandise and/or property, unless prohibited by United States of America law or United States of America governmental decree, at and from ports and/or places in the world to and at ports and/or places in the world directly or via ports and/or places in any order, including the risk of transshipment by land, air, water, or otherwise.

* * *

14.   **WAREHOUSE TO WAREHOUSE:**

This insurance attaches from the time the goods and/or merchandise and/or property leaves the warehouse and/or store or other location at the place named in the policy, special policy, certificate or declaration for the commencement of the transit and continues until the goods and/or merchandise and/or property are delivered to final warehouse store or other location at the destination named in the policy, special policy, certificate or declaration or until the expiry of 15 days or (30 days if the destination to which the goods and/or merchandise and/or property are insured is outside the limits of the port) whichever shall first occur. The time limits referred to above to be reckoned from midnight of the day on which the discharge over the side, of the goods and/or merchandise and/or property hereby insured from the overseas vessel is completed. Held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the above time limits arising from circumstances beyond the control of The Assured.

*NOTE: It is necessary for The Assured to give prompt notice to This Assurer when the Risk Manager or equivalent become aware of an event for which they are "held covered" under this policy and the right to such cover is dependent on. compliance with this obligation.*

15.   **MARINE EXTENSION CLAUSES:**

Notwithstanding anything to the contrary in or endorsed on this policy, it is understood and agreed that the following terms and conditions shall apply to all shipments which become at risk hereunder

(1) This insurance attaches from the time the goods and/or merchandise and/or property leave the warehouse at the place named in the policy, special policy, certificate or declaration for the commencement of the transit and continues until the goods and/or merchandise and/or property are delivered to the final warehouse at the destination named in the policy, special policy, certificate or declaration, or a substituted destination as provided in Clause (3) hereunder.

\* \* \*

5

**16.**   **BUYERS AND SELLER'S INTEREST:**

Regardless of the terms of purchase by The Assured from suppliers or the terms of sale by The Assured to their customers, this policy, subject to all of its terms and conditions, attaches and fully covers the goods and/or merchandise and/or property continuously from warehouse to warehouse. This Assurer hereby acknowledge the insurable interest of The Assured and their liability thereto in the event of claims for loss or damage.

\* \* \*

**69.**   **F.O.B., FAS., ETC., SHIPMENTS:**

This insurance is extended to cover goods and/or merchandise and/or property sold by the Assured on F.O.B., F.A.S., Cost and Freight or similar terms whereby the Assured is not obligated to furnish marine insurance. This policy attaches subject to its terms and conditions and continues until the goods and/or merchandise and/or property are loaded onto the primary conveyance or until The Assured's interest ceases.

24.   Claims under the Policy are handled by and, if covered, paid from AGCS' office in New York.

**UNDERLYING FACTS – THE INSURANCE CLAIM**

25.   Willis submitted a New Marine Claim/Loss Report to AGCS' office in New York on January 31, 2014 describing the nature of the claimed loss as follows:

WFS [World Fuel] was informed that it was the victim of a scam in which someone impersonated the U.S. Defense Logistics Agency ("DLA") and set up a fake tender/bid offer for the supply of a large cargo of fuel.  Believing the bid/tender was legitimate, WFS unknowingly supplied the cargo, and when it sent the invoice to the DLA for payment, they advised that WFS' invoice did not match any official DLA tender.  The value of the now mssing [*sic*] cargo is approximately $18M USD.

26.   The fake tender referred to by Willis is a Request for Quote that was purportedly issued by DLA Energy PEA on October 28, 2013 seeking a quote for, among other items, one

delivery of over five million gallons of marine gas oil ("MGO") to be delivered November 12 - 15, 2013 "From Sellers Barge/Tanker To Government's Provided Barge, Or Ship To Ship Offshore Abidjan, Ivory Coast Ghana Coast" on "FOB Origin" terms.  The Request for Quote noted "FOB Origin Supplier's Tankers Only Are Allowed."

27.     World Fuel Services Europe purportedly submitted an offer on November 6, 2013 in response to the alleged Request for Quote.

28.     The FOB offer was accepted and a contract was allegedly awarded to World Fuel Services Europe by DLA on November 20, 2013.

29.     The purported contract called for the delivery of 17,000 MT of MGO in two parcels via tanker (11,500 MT and 5,500 MT).  The award set a fixed price of US$17,284,750. The delivery location and the period of performance stated in the contract were "Offshore Abidjan, Ivory Coast via STS transfer about 40-50 nautical miles offshore : November 30-December 2, 2013."  The purported buyer's vessel was changed on two occasions, the delivery period was extended and the delivery location was changed from offshore Abidjan to offshore Lome.  The payment terms were "Net 30 days."  The contract provided that the delivery terms were "FOB Destination unless block is marked."  While the block in the contract was marked and said "See Schedule," there are no delivery terms on the schedule.

30.     World Fuel sourced the MGO for this transaction from Monjasa AS on terms that were back-to-back to the terms of the purported DLA contract.

31.     World Fuel had "flash title" ownership to each parcel of MGO as it was delivered to the purported buyer's vessel, the M/T OCEAN PEARL, which was the primary conveyance for the back-to-back transactions.

32.     The M/T MARIDA MARIGOLD reportedly transferred 11,756 MT of MGO to the OCEAN PEARL at Lome Anchorage between December 7 - 9, 2013.

33.     The M/T AFRICAN LEADER reportedly transferred 5,261 MT of MGO to the OCEAN PEARL at Lome Anchorage between December 10 - 11, 2013.

34.     World Fuel Services Europe issued an invoice to DLA on December 20, 2013 in the amount of US$17,910,823.28.   The invoice was for the 11,756 MT of MGO reportedly transferred from the MARIDA MARIGOLD ($12,317526.07), the 5,261 MT of MGO reportedly transferred from the AFRICAN LEADER ($5,496,557.21) and demurrage incurred for the MARIDA MARIGOLD ($96,750).

35.     In the New Marine Claim/Loss Report submitted by Willis at the end of January 2014, it was claimed that "[t]he fuel was supplied on or about December 7, 2013, but WFS just discovered the loss this week when the DLA informed it that WFS' invoice didn't match any official DLA tender."

36.     DLA has allegedly refused to pay the invoice issued by World Fuel.

37.     World Fuel is claiming under the Policy for the loss of the MGO delivered to the OCEAN PEARL.

38.     AGCS sent a letter to World Fuel, via Willis, on March 19, 2014 advising that AGCS was investigating the claim and reserving its rights under the Policy.

39.     AGCS investigated the claim, including engaging an outside company to conduct part of the investigation by gathering documents and information from World Fuel.

40.     By and through this declaratory judgment action, AGCS hereby declines coverage under the Policy for the claimed loss of MGO.

## AS AND FOR A FIRST CAUSE OF ACTION

41.    AGCS repeats and realleges each and every allegation set forth in paragraphs "1" through "40" of this Complaint with the same force and effect as if more fully set forth herein.

42.    The default all risks coverage for shipments of bulk liquids by vessel provides coverage "from time of leaving tanks at port of shipment and while in transit and/or awaiting transit and until safely delivered in tanks at destination."

43.    Clause 14 of the Policy Form provides that the "insurance attaches from the time the goods and/or merchandise and/or property leaves the warehouse and/or store or other location at the place named in the policy, special policy, certificate or declaration for the commencement of the transit and continues until the goods and/or merchandise and/or property are delivered to final warehouse store or other location at the destination named in the policy, special policy, certificate or declaration . . . ."

44.    Clause 15 of the Policy Form provides that the insurance "attaches from the time the goods . . . leave [ ] the warehouse . . . for the commencement of transit and continues until the goods . . . are delivered to the final warehouse . . . ."

45.    Clause 16 of the Policy Form provides that, regardless of the terms of sale by World Fuel, the Policy "attaches and fully covers" the goods from warehouse to warehouse.

46.    Clause 69 of the Policy Form provides that, when goods are sold FOB by World Fuel, the insurance extends to cover the goods until they are "loaded onto the primary conveyance."

47.    The foregoing provisions indicate that the intent of the Policy is to cover insured goods while they are in transit (*i.e.*, the time when the goods are being transported). The Policy

is concerned with such perils as might occur between the time the goods are shipped by World Fuel and the time they are received by the customer placing the order.

48.    Under the terms and circumstances of the subject FOB transaction, the final place of delivery/warehouse was the tanks of the OCEAN PEARL.

49.    The MGO sold by World Fuel did not suffer any loss or damage while it was in transit.

50.    The MGO sold by World Fuel was not stolen or otherwise misappropriated while it was in transit.

51.    The MGO was safely delivered to the primary conveyance and final destination to which it was supposed to be delivered (*i.e.*, the OCEAN PEARL).

52.    World Fuel is not entitled to coverage under the Policy for the claimed loss because the loss did not occur during the period that coverage attached to the MGO under the Policy or, alternatively stated, the fortuitous event and/or covered peril if any, that resulted in the claimed loss did not occur during the period that coverage attached to the MGO under the Policy.

## AS AND FOR A SECOND CAUSE OF ACTION

53.    AGCS repeats and realleges each and every allegation set forth in paragraphs "1" through "52" of this Complaint with the same force and effect as if more fully set forth herein.

54.    The nature of the complementary transactions between World Fuel and the purported buyer and between World Fuel and Monjasa put in place a pre-shipment condition that would inevitably result in the claimed loss or, alternatively stated, the claimed loss was not the result of a fortuitous event.  Therefore, World Fuel is not entitled to coverage under the Policy for the claimed loss.

**WHEREFORE**, Plaintiff AGCS Marine Insurance Company prays as follows:

A.    For judgment on the FIRST and SECOND CAUSES OF ACTION in favor of Plaintiff AGCS Marine Insurance Company and against Defendants World Fuel Services, Inc. and World Fuel Services Europe, Ltd. declaring that there is no coverage under the Policy for the claimed loss of MGO; and

B.    For such other and further relief as the Court deems just and proper under the circumstances, together with the costs and disbursements of this action.

Dated: New York, New York
   July 30, 2014

      NICOLETTI HORNIG & SWEENEY
      *Attorneys for Plaintiff*

    By: _____

     John A.V. Nicoletti
     Wall Street Plaza
     88 Pine Street, Seventh Floor
     New York, New York 10005
     (212) 220-3830

# EXHIBIT

# "1"

Allianz Global Corporate & Specialty®                    **Allianz** 

---

## CONFIRMATION OF INSURANCE
## POLICY # OC & OCW 91524500

**ASSURED:**

**World Fuel Services, et al.** and its subsidiary, associated, affiliated and interrelated companies and joint ventures in which it now has or hereafter may have a direct interest and other entities for whom they may have instructions to insure or deem themselves responsible to insure.

       9800 NW 41st Street Suite 400
       Miami, Florida 33178

**TYPE:**        International, Worldwide Inland Transit, Stock, War, S.R. & C.C. & TRIA
               Including Pipeline Transit coverage as noted herein.

**EFFECTIVE:**

Effective with respect to all shipments made on or after October 1, 2013 – Open until cancelled

**CANCELLATION:**

Subject to 60 days Notice of Cancellation in respect of Marine Risks by either the assured or the underwriter, except 10 days notice for non-payment of premium. War and SR&CC at 48 hours written notice, telegraphic, telefaxed, or e-mail notice by either the assured or the underwriter. For goods in storage, coverage shall cease on date of cancellation.

**GEOGRAPHIC LIMITS:**

At and from ports and /or places in the world, including worldwide inland transit, to and at ports and /or places in the world directly or via ports and /or places in any order, including the risks of transshipment by land, air, water, or otherwise.

EXCLUSIONS- applicable to all Transit and Inventory
- Excluding countries and coverage that would be in violation of any US economic or trade sanctions such as but not limited to, those sanctions administered and enforced by the US Treasury Departments Office of Foreign Assets Control ("OFAC").

- Shipments into, through and within Pakistan and Afghanistan are specifically excluded from this policy (coverage cease when the cargo crosses the border)

- Coverage for land Conveyances from any Baltic port & /or terminal to Serkhetebad, Turgundi, Hairaton, Spitimat & /or Tajikistan is specifically excluded from this policy.

- Coverage is also specifically excluded for all storage locations in Afghanistan and Pakistan



**Allianz Global Corporate & Specialty®**  

<u>INTEREST:</u>
Goods and/or merchandise and/or property of every description incidental to The Assured's business consisting principally of, but not limited to **Petroleum products, oil products and fuel oils, diesel, jet fuel, de-icing fluid and similar bulk liquid and fuel products** incidental to the Assured's business however excluding all transit and storage in Natural Gas Pipelines UNLESS OTHERWISE NOTED HEREIN, and including prepaid freight and/or advanced freight and/or guaranteed freight "vessel lost or not lost" (Under and/or On Deck) shipped by or to the Assured or by or to others for The Assured's account or control or in which The Assured may have an interest; also to cover shipments of goods and / or merchandise and /or property for the account of others for which The Assured agrees or receives instructions to insure.

<u>LIMITS of LIABILITY:</u>
**Vessel/Air:**  $50,000,000  Per any one conveyance, connecting conveyance, craft or at any place at any time.

**Rail Car:**  $ 2,500,000  Per any one railcar, however not to exceed
$25,000,000  any one train (Except as a connecting conveyance).

**Truck/Trailer:** $25,000,000  Per any one Truck, Trailer (Except as a connecting conveyance)

**Barge:**  $25,000,000  by any one approved iron and/or steel barge (except as a connecting conveyance), nor for more than $25,000,000 in any one tow.

**LIQUID PipelineTransit:**

**$25,000,000**  per occurrence(*) for movements of liquids within liquid pipelines within the 48 contiguous states

**NATURAL GAS PipelineTransit:**

**$ 1,000,000**  per occurrence (*) for movement of natural gas products for US ENERGY SERVICES (USES) on the Northern Natural Gas (NNG) system;

(*) Occurrence is defined as sudden and accidental release of gas/ liquid.

**Rolling Stock:** EXCLUDED

**Warehouse:**  $25,000,000  any one location on file with underwriters, with the exception of the following locations:
<u>Location</u>    Lake Charles, LA    Limit: $40,000,000

$5,000,000(*)  any one unnamed location worldwide (excluding all Brazil locations unless noted on the schedule in local Brazil policy); however no more than **$2,500,000 per occurrence and in the Annual Aggregate (Unnamed locations)** for the perils of Earthquake Shock, Flood and Windstorm COMBINED as defined herein

**Allianz Global Corporate & Specialty®** 

**Warehouse: (cont'd)**

(*) Furthermore, it is hereby understood and agreed that this company shall be liable for up to $5,000,000 per unnamed storage locations for a period of up to 60 days. Within the 60day period the Assured shall advise the company of the new location and the values at risk as said locations. If not reported within the 60 day period, the limit at said unnamed location shall be reduced to $2,500,000.

**Flood Sublimit and aggregate:**
In no event shall the underwriters herein be liable for more than **$25,000,000** any one occurrence (as defined below) and in the annual aggregate as respects losses/Claims from Flood.

**Windstorm Sublimit and aggregate:**
In no event shall the underwriters herein be liable for more than **$25,000,000** any one occurrence (as defined below) and in the annual aggregate as respects losses/Claims from Windstorm.

**Earthquake Sublimit and aggregate:**
In no event shall the underwriters herein be liable for more than **$25,000,000** any one occurrence (as defined below) and in the annual aggregate as respects losses/Claims from Earthquake

<u>Note:</u> Locations with limits above $25,000,000 shall be named and scheduled to the policy. It is understood by all parties concerned that the location limit applies to the total number of storage tanks and their combined values in any one location or refinery.

Full address disclosure and warehouse contact information to be provided upon binding coverage.

<u>*Windstorm:*</u>
*Named Storm is defined as weather or atmospheric condition that has been declared as a hurricane, typhoon, tropical storm or cyclone by the U.S. National Weather Service, World Meteorological Organization, Australia Bureau of Meteorology, Philippine Atmospheric, Geophysical & Astronomical Services Administration, the Seychelles Meteorological Services or a similar weather organization.*

*Damage directly caused by or resulting from a Named Storm shall, for all purposes, include but not be limited to any associated physical force (to the extent insured under this policy) whether described as wind, hail, lighting, tornado, rain or water (whether driven by wind or not), Flood, tidal wave, wind driven objects or debris.*

<u>*Occurrence:*</u>
*The physical source of Damage to Insured Property, regardless whether it creates more than one Insured cause of loss. One occurrence is the aggregate amount of all fully adjusted claims covered under this policy that arise from that physical source. In establishing the amount of the deductible, limit or sublimit to be applied for an Occurrence, the following shall apply:*

*An Occurrence for Name Storm or Windstorm is the sum total of all Damage and Time Element loss insured hereunder arising out of or caused by the same atmospheric disturbance during any period of seventy-two (72) consecutive hours;*



**Allianz Global Corporate & Specialty®** 

*Flood:*
*A temporary condition of partial or complete inundation of normally dry land areas from any of the following:*

1. *The overflow of inland or tidal waters;*
2. *The unusual and rapid accumulation or runoff of surface waters from any source;*
3. *Wave action, force of water (whether wind driven or not), storm surge, Named Storm, tsunami or the release of impounded water;*
4. *The failure, overtopping, or breach of any structured designed to hold any body of water, river or stream.*

*If Named Storm or Earth Movement are excluded by this Policy, then Flood caused by any of the above items that is associated with or related in any way to Named Storm or Earth Movement, respectively, is excluded.*

*Occurrence:*
*The physical source of Damage to Insured Property, regardless whether it creates more   than one Insured cause of loss.  One occurrence is the aggregate amount of all fully   adjusted claims covered under this policy that arise from that physical source.  In establishing the amount of the deductible, limit or sublimit to be applied for an Occurrence, the following shall apply:*

*An Occurrence for Flood is the sum total of all Damage insured hereunder sustained during any period of seventy- two (72) consecutive hours by reason of flood.*

*Earthquake:*
*Earth movement, including but not limited to earthquake, landslide, mud flow, earth sinking, earth rising or shifting, or loss or damage caused directly or indirectly by any ensuring peril or perils, with the exception of ensuing fire or explosion.*

*Occurrence:*
*The physical source of Damage to Insured Property, regardless whether it creates more   than one Insured cause of loss.  One occurrence is the aggregate amount of all fully   adjusted claims covered under this policy that arise from that physical source.  In establishing the amount of the deductible, limit or sublimit to be applied for an   Occurrence, the following shall apply:*

*An Occurrence for Earth Movement means the sum total of all Damage and Time Element Losses insured hereunder during any period of seventy –two (72) consecutive   hours by reason of Earth Movement.*

**TERMS and CONDITIONS:**
**Guaranteed Outturn shall act as the default coverage for all Bulk Liquid VESSEL shipments:**

**BULK OIL CLAUSES - GUARANTEED OUTTURN**

Against all risks whatsoever, excluding the risks excepted by the F.C.&S. and S.R.&C.C. Warranties unless covered elsewhere herein, from time of leaving tanks at port of shipment and while in transit and/or awaiting transit and until safely delivered in tanks at destination.  To also pay for all shortage and/or loss in weight, subject to the "Normal or Trade Loss" as defined below, based on a comparison of the certified outturn weights.

This insurance also to pay the insured value of any materials lost from connecting pipe lines, flexible or otherwise, in loading, transshipment or discharge.

**Allianz Global Corporate & Specialty®**                           **Allianz ⑪**

Normal or Trade Loss:  With respect to all claims for differences between the shipped and outturn weights, this Insurer shall be liable only in excess of 0.5% of the portion insured hereunder of the shipped contents of each tank, which 0.5% shall be deemed to be normal or trade loss and shall be deducted from the shipped weight to determine the expected outturn.

In the event of there being more than one loss or accident of a similar nature to any one shipment coming within the terms and conditions of this policy, only one deduction of 0.5% shall be deducted from the shipped weight in determining the expected outturn.

Warranted by the Insured that ship/barge tanks be cleaned, tested and approved prior to loading of cargo and a certificate therefore be given by a surveyor approved by this Insurer at port of loading.  The cargo shall be analyzed, gauged and weighed and temperatures of cargo shall be taken at the time of and during loading and a certificate issued in accordance therewith.

In the event of cargo insured being intended for loading or discharge into tank barges, lighters or tank cars for conveyance to/from shore tanks, warranted by the Insured that prior to loading into such conveyance, a certificate that same has been approved shall be obtained from a surveyor approved by this Insurer.

Surveyor approved by this Insurer shall be notified and a survey made of the tanks prior to discharge for purpose of taking temperature of cargo at time of discharge and for the general purposes of checking, gauging or measurement of the outturn of the cargo from tanks.

Should the surveyor issue a certificate showing a difference in weight, the amount of such difference shall be determined by comparison of the survey at port of loading and the report of survey at discharge, which surveys shall be considered as final.

If a claim is to be filed for contamination, then in order to ascertain the measure of damage through contamination as provided for herein, a test or tests shall be made by a chemist approved by this Insurer.

With respect to such contamination losses, Underwriters shall be liable for the actual cost of reconditioning including all expenses incidental thereto which are necessary to bring the cargo back to its original condition, less, however, the normal expenses of refining in cases where the cargo was intended for refining.  Underwriters are also to pay for loss in weight and depreciation on such part of the cargo which could not be brought back to its original condition.  All such losses are payable irrespective of percentage.

All surveys and chemical analyses to be at the expense of the Insured except that in the event of loss, this Insurer shall be liable for the enhancement of the cost of surveys and/or analyses to determine the amount of the claim.

It is further agreed that surveys performed by qualified personnel of the Named Insured will be acceptable to this Insurer.  Claims for contamination subject to confirmation by independent surveyor approved by this Insurer.

In the event the above survey warranties are not complied with, coverage provided will automatically be subject to Bulk Oil Clauses, Form SP-13C.

<u>BULK OIL CLAUSES (SP-13C) JAN 1962</u>

1.  The Assured are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the bills of lading and/or charter party.  The seaworthiness of the vessel and/or craft as between the Assured and Assurers is hereby admitted, and the Assurers agree that in the event unseaworthiness or a wrongful act or misconduct of ship-owner, charterer, their agents or servants, shall directly or

*Page 5 of 12*

**Allianz Global Corporate & Specialty®**  

indirectly, cause loss or damage to the cargo insured by sinking, stranding, fire, explosion, contact with seawater, or by any other cause of the nature of any of the risks assumed in the policy, the Assurers will (subject to the terms of average and other conditions of the policy) pay to an innocent Assured the resulting loss. With leave to sail with or without pilots, and to tow and assist vessels or craft in all situations and to be towed.

2. Provided prompt notice be given the Assurers when such facts are known to the Assured and additional premium be paid if required, it is understood and agreed that in case of short shipment in whole or in part by the vessel reported for insurance hereunder, or if the goods be transhipped by another vessel or vessels, or be carried beyond or discharged short of destination, or in the event of deviation, or change of voyage, or any interruption or other variation of the voyage or risk beyond the control of the Assured, this insurance shall nevertheless cover the goods until arrival at the final destination named in the policy or certificate of insurance or until the subject matter insured is no longer at the risk of the Assured, whichever may first occur. No additional risks (whether of delay or of any other description) are insured under this clause, which is intended merely to continue the insurance in force against the same risks named elsewhere in this policy or certificate and if the risks of War, Strikes, Riots or Civil Commotions, or any of these risks, are insured against, the insurance against such risks shall not be extended by this clause to cover contrary to any express provision of such insurance.

3. Including all risks of transhipment if required and of craft to and from the vessel, each lighter, craft or conveyance to be considered as if separately insured; also to cover any special or supplementary lighterage at additional premium if required. The Assured is not to be prejudiced by any agreement exempting lightermen from liability.

4. General Average, Salvage and Special Charges, as per foreign custom, payable according to foreign statement, and/or per York-Antwerp Rules and/or in accordance with the contract of affreightment, if and as required; or, failing any provision in or there be no contract of affreightment, payable in accordance with the Laws and Usages of the Port of New York; and it is agreed that in the event of salvage, towage or other assistance being rendered to the vessel and/or interest hereby insured by any vessel belonging in part or in whole to the same owner or under the same management, the value of such services (without regard to the common ownership or management) shall be ascertained by arbitration and the amount so awarded, insofar as applicable to the interest hereby insured, shall constitute a charge under this policy.

5. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever whether due to negligence or not, for which or for the consequences of which the Shipowner is not responsible by statute or contract or otherwise, these Assurers shall nevertheless pay Salvage and/or Special Charges incurred in respect of the interests hereby insured and shall contribute with the Shipowner in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred.

6. It is agreed that no right of subrogation except through General Average shall lie against any vessel or craft, or in respect to any pipe lines, on which cargo hereby insured is being carried or in respect of which freight insured hereunder is at risk, belonging in part or in whole to a subsidiary and/or affiliated company.

7. Against all risks whatsoever (excepting as hereinafter provided) excluding the risks excepted by the F. C. & S. and S. R. & C. C. warranties incorporated herein, from time of leaving tanks at port of shipment and whilst in transit and/or awaiting transit and until safely delivered in tanks at destination, but notwithstanding anything herein to the contrary, the Assurers are not liable for shortage and/or leakage and/or contamination (except as elsewhere in this policy pro- vided) unless caused by or arising out of the vessel or craft being stranded, sunk, burnt, in collision or in contact with any substance or thing (ice included) other than water, fire, explosion (howsoever and wheresoever occurring) or there be a forced discharge of cargo; pro- vided, however, that these Assurers are liable for contamination resulting from stress of weather.

*Page 6 of 12*

**Allianz Global Corporate & Specialty®** 

It is agreed that notwithstanding anything herein to the contrary, this insurance is to pay the insured value of any oil lost from connecting pipe lines, flexible or otherwise, in loading, transshipment or discharge. Claims are to be paid irrespective of percentage, but subject to deduction for normal shortage.

8.   This insurance is also especially to cover any loss of and/or damage to the interest insured hereunder, including shortage and/or leakage and/or contamination, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the Master, Mariners, Mates, Engineers or Pilots; provided, however, that this clause shall not be construed as covering loss arising out of delay, deterioration or loss of market, unless otherwise provided elsewhere in this policy.

9.   These Assurers also agree that any action or proceeding against them for the recovery of any claim under or by virtue of this insurance shall not be barred if commenced within the time prescribed therefor in the Statutes of the State of New York.

10.   The warranty that vessel be loaded under inspection of surveyors appointed by the underwriters is hereby waived.

11.   In the event that this Policy is extended to cover property prior to the attachment or subsequent to the expiration of the cover provided by the attached Marine Extension Clauses, such extension shall always be subject to the following exclusion unless specifically otherwise stated in writing signed by this company in the extension endorsement or otherwise:

This Company shall not be liable for any claim for loss, damage or expense arising directly or indirectly from any nuclear incident, reaction, radiation or any radio-active contamination, all whether controlled, or uncontrolled, occurring while said property is within the United States or any territory of the United States, the Canal Zone or Puerto Rico,  or arising from a source therein, and whether the loss, damage or expense be proximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, if this Policy insures against the peril of fire, then direct loss by fire resulting from nuclear incident, nuclear reaction, or nuclear radiation or radioactive contamination is insured against by this Policy.

12.   Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time  of peace or war and whether lawful or otherwise; also warranted free whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or by any mine or torpedo, also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

13.   Warranted free of loss or damage caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder.



**Allianz Global Corporate & Specialty®**     

14.  If this policy is issued for a period of time, it is agreed that should the vessel at the expiration hereof be at sea, or in distress, or at a port of refuge or of call, the interest hereby insured shall, pro- vided previous notice be given to the insurers, be held covered at a pro rata premium until arrival at port of destination.

15.  Where goods are shipped under a bill of lading containing the so-called "Both to Blame Collision" Clause these Assurers agree, as to all losses covered by this insurance, to indemnify the Assured for any amount (up to the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause.  In the event that such liability is asserted the Assured agree to notify the Assurers who shall have the right at their own cost and expense, to defend the Assured against such claim.

With respect however to shipments of aviation jet fuel (Jet A-1 etc) coverage is as above except there is no coverage for contamination and/or loss of specification caused by copper alloy heating coils. Applies to all BOC clauses.

COVERAGE FOR OTHER CARGOS:
Against all risks of physical loss or damage from any external cause, except those risks that may be excluded by the F.C.&S. warranty, SR&CC warranty and / or other warranties or exclusions specified in this policy, unless covered elsewhere herein, irrespective of percentage.

<u>PIPELINE COVERAGE:</u>

Coverage is provided hereunder in respect of movements of liquids and gases **(as per limits of liability clause herein)** in pipelines, except where such movement is part of loading or unloading operation, against all risks of physical loss of or damage to the subject matter insured from any external cause, with coverage to apply from the time the subject matter first enters the pipeline until discharged from pipeline at destination. Such coverage is deemed to include physical loss or damage in consequence of explosion of or defects in and/or failures of breakage of pipelines, tubes, tanks pipelines, taps, valves, connections and other fittings and also physical loss or damage as a consequence of wrong or mistakenly opening or closing of taps and/or valves or by carrying our incorrect connections.

Movements of liquids and gases **(as per limits of liability clause herein)** in pipelines during loading and/or discharge operations shall be considered to be part of the overall transit movement insured hereunder and be subject to the applicable insuring conditions and deductibles relating to such transit.

Subject to deductible of **0.50% with a minimum deductible of $100,000** applied as per Deductible Clause elsewhere herein.

This policy HOWEVER, shall not cover loss or damage caused by or attributed to:
Mysterious disappearance, unexplained shortage or loss in weight, saturation, absorption or loss or shortage incurred from normal operations disclosed on taking inventory

<u>WAREHOUSE:</u>

**Per Expiring Warehouse Endorsement except as otherwise noted herein**



**Allianz Global Corporate & Specialty®**  **Allianz** ⑪

<u>EXTRA EXPENSE:</u>
In the event of frustration, interruption and/or termination of the insured voyage from causes beyond the control of the Assured, this policy will pay all extra expenses incurred by the Assured forwarding the goods to the original or substituted final destination. In no case shall this company be liable under this clause for **no** more than 25% of the insured value of the shipment.

<u>VALUATION:</u>
Valued at the highest valuation produced by either Clause A or B as follows:

A.   Invoice value (premium included), including all charges in the invoice and including prepaid and/or guaranteed and/or advanced freight, if any, plus 10%;

     OR

B.   The highest market value attained between the date of shipment and the earliest of the following dates, plus 10%.

     1. Date of arrival of the carrying vessel at the port of destination.
     2. Date of the total loss of the vessel or the cargo.
     3. Date of report of the vessel being stranded, sunk, on fire, or in collision.
     4. Due date of arrival of the vessel at its port of destination, in respect to missing vessels.
     5. In all other cases not specified above, the date the extent of the loss becomes known to the Assured.

Less unincurred duty and unincurred or contingent freight charges, if any. The Market Value of commodities is to be determined by current market quotation in United States currency as published by the Journal of Commerce or other recognized trade publications as may be agreed.

<u>TRANSIT & STOCK DEDUCTIBLE:</u>
Except or as noted otherwise herein (i.e. Brazil and Pipeline transit coverage):
From each claim for loss or damage, the following amounts shall be deducted:

Transit-   0.5% of the insured value of the goods in transit at the time of loss

Storage-   0.5% of the insured values of the goods **(subject to a MINIMUM of $100,000)** in storage at the time of loss

Flood,
Windstorm, &
Earthquake:   2.5% of the insured value of the goods in storage at the time of loss subject to a minimum deductible of $250,000 per occurrence

However, these deductible shall not apply to (i) survey fees, (ii) general average, salvage or special charges, (iii) loss, damage or expense covered under the Sue and Labor or Debris Removal clauses, or the SRCC endorsement.

This deductible shall not be applied so as to reduce This Assurer's obligation to pay the full amount of any limit(s) of liability set forth within this policy.

Allianz Global Corporate & Specialty® 

<u>PREMIUM:</u>

**Minimum Annual Deposit Premium of $1,100,000 (\*) payable annually,** however excluding Brazil which is separate and in addition to and as noted in details below. Premium is based on estimated gross revenues of USD $38,000,000,000 for the policy period and adjustable at expiry at a rate of 0.0029% applied to gross revenue for the policy period.

However, no adjustment shall apply in the event that the actual gross revenue for the policy period exceeds the foregoing estimate by more than 10%.

(\*) **Includes Argentina , Canada and Puerto Rico** if required, Local policy premium however, NOT inclusive of taxes, fees, overrides and other legislatively required charges and are subject to adjustment if tariff rate required which are separate and in addition to the risk transfer premiums noted herein.

In addition, <u>EXCLUDES Brazil policy</u> premium which is provided separately herein.

Should the Assured have any acquisitions during the term of the policy, exposure information is required to be submitted within 30 days of the closing of the purchase. Additional rate and premiums to be agreed

<u>LOCAL POLICIES:</u>
PREMIUM for local policies to be invoiced and paid locally and collected by the Insured's network

Local Policy, if deemed required, risk transfer premium are included in the above, except for Brazil which is separate and in addition to, and noted herein, however, not inclusive of taxes, fees, overrides and other legislatively required charges and are subject to adjustment if tariff rate required which are separate and in addition to the risk transfer premiums noted herein.

Assured agrees to accept "good local standard" wording if the global coverage cannot be matched.

The master policy will provide difference in conditions/difference in limits coverage to the extent of the terms and conditions of this policy over all local ALLIANZ/AGCS policies. Any claims covered on a DIC/DIL basis are payable to the Assured's headquarters in the USA unless local law permits otherwise.

Any additional local policies to be added are subject to premium to be agreed.

<u>BRAZIL:</u>

Flat Premium: $350,000 Net

Brazil local net premium to be paid locally. Local premium to be grossed up for commission as well as local frictional charges, taxes, fees, overrides which are separate and in addition to.

|           |                                                    |
|-----------|----------------------------------------------------|
| $2,500,000 | Import/Export                                     |
| $ 250,000  | Overland Transit per truck                        |
| $5,000,000 | per NAMED temporary storage locations <u>as noted below</u> (\*) |

(\*)Any additional locations to be advised and premium to be charged if deemed necessary. 

*Page 10 of 12*

**Allianz Global Corporate & Specialty®**    Allianz 

| Locations | Address | City | Volume | Value USD |
|---|---|---|---|---|
| MARINE refers to product intended for the maritime industry which may be stored in port terminals. | | | | |
| Ipanema Barge | Avenida Feliciano Sodré nº 215 – Niteroi – Rio de Janeiro | Rio de Janeiro | 874 | $ 940,408 |
| TWB Barge | Avenida Feliciano Sodré nº 215 – Niteroi – Rio de Janeiro | Rio de Janeiro | 267 | $ 288,795 |
| Sao Miguel Barge | Avenida Feliciano Sodré nº 215 – Niteroi – Rio de Janeiro | Rio de Janeiro | 267 | $ 288,795 |
| | | | MARINE BRAZIL TIV | $ 1,517,997 |

| Location | Address | City | Volume | VALUE $USD |
|---|---|---|---|---|
| LAND refers to product stored on land that is principally for trucking and other land based conveyances. | | | | |
| PETROSUL-SP | Av. SIDNEY CARDON DE OLIVEIRA, 1723 CASCATA - PAULINIA | SÃO PAULO | 2,939,999 | 2,220,054 |
| COPAPE-SP | RUA MADRI, 121 - - SALA 01 JARDIM ARAPONGA - GUARULHOS | SÃO PAULO | 2,128,951 | 2,116,269 |
| RUFF-SP | AVENIDA ERNESTO IGEL-3714-BONFIM-PAULINIA | SÃO PAULO | 1,112,882 | 1,070,387 |
| DIRECIONAL - RJ | AVENIDA MONROE, VILA ACTURA DUQUE DE CAXIAS | RIO DE JANEIRO | 1,089,201 | 925,528 |
| PANDENOR - PE | AV PORTUARIA, 69 - IPOJUCA | PERNAMBUCO | 857,643 | 817,388 |
| OILTANKING - ES | AV VALE DO RIO DOCE - VILA VELHA | VITÓRIA | 746,685 | 666,708 |
| CARBOPETRO-SP | ESTRADA GUARULHOS/SAO MIGUEL ,301 - JARDIM LEBLON | SÃO PAULO | 653,909 | 590,108 |
| ALE - RJ | AVENIDA MONROE, B10, VILA ACTURA DUQUE DE CAXIAS | RIO DE JANEIRO | 613,717 | 564,370 |
| ALESAT-SP | ESTRADA VELHA DE GUARULHOS, 35, PIMENTAS GUARULHOS | SÃO PAULO | 347,024 | 320,825 |
| TOTAL - LF | VIA MADRE DEUS, S/N, KM 42,5 SÃO FRANCISCO DO CONDE | BAHIA | 203,301 | 197,907 |
| TEQUIMAR | VIA MATOIM, S/N, PORTO DE ARATU-CANDEIAS | BAHIA | 218,838 | 199,168 |
| TECAB - PB | R. PRES. JOÃO PESSOA | PARAIBA | 184,140 | 125,042 |
| DEMOCRATICO - BA | Av. Comendador Firmino Alves, 60, 8º andar, Sala 802 | BAHIA | 69,447 | 60,462 |
| SÃO JOSE DOS CAMPOS - SP | Rua Gregório Gurevich, 260 | SÃO PAULO | 80,753 | 48,555 |
| BAGUAR-SP | AV. ORLANDA BÉRGAMO , S/N GUARULHOS | SÃO PAULO | 48,781 | 29,331 |
| REDEPETRO-SP | Rodovia Alexandre Balbo – SP 328 – S/Nº - KM 327 | SÃO PAULO | 42,979 | 25,843 |
| | | | LAND BRAZIL TIV | $9,968,952 |

Assured agrees to accept "good local standard" wording with the following amendments:
- No waiver of subrogation for these 3rd party locations
- Sublimits and deductibles for fire - USD $1,000,000 per occurrence fire sublimit with a deductible of BRL 100,000 (est USD$50,000)
- Including review clause if loss ratio is over 60%
- Require Surveys on locations with high exposure - TBA
- 15% of retention to AGCS Re Brazil

<u>Brazil premium and terms and conditions are based on underwriting information</u> as noted below. Variance to be reported immediately to this Company and we reserve the right to amend quote if deemed necessary.

- No Inventory or transit losses
- Import/Export policy - USD $20 million in turnover
- Inland transit Policy- USD $1billion in turnover

This is also the policy that they will look to include the storage in as "temporary storage" within the terms of the policy, thus covering the tank storage exposures. This is only possible if the goods are not undergoing any level of processing at these locations (such as mixing gas additives in), and are simply just being stored there. If we run into problems for some reason, we will revert to the property policy route using similar terms and conditions.

*Page 11 of 12*

**Allianz Global Corporate & Specialty®** 

<u>POLICY FORM:</u>

As per the AGCS approved Willis Policy form amended as noted herein including the below noted:

- **Debris Removal** – "This Company shall not be liable under this policy and this Clause for more than 10% of the insured value of the goods in no event to exceed $4,000,000."
- **Concealed damage** - 90 days
- **Consolidation/Repacking** - 60 days
- **Control of Damaged Goods wording** - No fear of loss
- **Profit Sharing** - 70/30/50 max 15% return, subject to a two year deficit carry forward and a cancellation and/or non renewal provision.  Profit Sharing excludes admitted placement premiums, War, SR&CC and TRIA premiums.
- **AIMU – US Economic and Trade Sanctions Clause**
- **AIMU – Chemical , Biological, Bio-Chemical and Electromagnetic Exclusion Clause**
- **Extended Radioactive Contamination Exclusion Clause with USA Endorsement**

<u>Florida Hurricane Catastrophe Fund Surcharge:</u> **Additional Premium**- $14,300
Surcharge of 1.3% for Florida Hurricane Catastrophe Fund, as mandated by the state of Florida.

<u>TRIA:</u>          **Additional Premlum**- $25,000 -ACCEPTED

<u>LOSS CONTROL:</u>     Loss Control services are included in our overall premium quoted.

<u>COMMISSION:</u>       **NIL**

<u>QUOTE SUBJECTIVITIES AND/OR CONDITIONS AND/OR VARIANCES:</u>

➢ Loss Control Meeting: If World Fuel Services elects to bind coverage with AGCS Marine, it is a condition of our coverage that we meet with the risk manager prior to policy inception but no later then 90 days after inception to discuss program expectations and organizational operation related to loss control.

➢ Warehouse Survey:  Storage facilities with values above $10,000,000. to be surveyed within 60 of binding at AGCS expense.

➢ Warehouse: Full address disclosure and warehouse contact information to be provided upon binding of coverage.

ISSUING
COMPANY:          <u>AGCS Marine Insurance Company</u>

AGCS MARINE INSURANCE COMPANY

10/22/13

AUTHORIZED SIGNATURE

*Page 12 of 12*

# EXHIBIT

# "2"

### _MARINE OPEN CARGO POLICY_

### _NO. OC 91524500_

#### _Of the AGCS Marine Insurance Company_

(Hereinafter referred to as This Assurer)

In consideration of premium paid or payable, as agreed, does insure:

**1.**   **THE ASSURED:**

**World Fuel Services, Inc.** and its subsidiary, associated, affiliated and interrelated companies and joint ventures in which it now has or hereafter may have a direct interest and other entities for whom they may have instructions to insure or deem themselves responsible to insure.

**2.**   **LOSS PAYEE:**

Losses payable to the Assured or order.

**3.**   **COVERING ON:**

Goods and/or merchandise and/or property of every description incidental to The Assured's business consisting principally of, but not limited **to Petroleum Products, Oil Products and Fuel Oils, Diesel, Jet Fuel, De-Icing Fluid and similar Bulk Liquid and Fuel Products** and including prepaid freight and/or advanced freight and/or guaranteed freight "vessel lost or not lost" (Under and/or On Deck) shipped by or to the Assured or by or to others for The Assured's account or control or in which The Assured may have an interest; also to cover shipments of goods and/or merchandise and/or property for the account of others on which The Assured agrees or receives instructions to insure.

**Note: Excluding transit and storage in Natural Gas Pipelines UNLESS OTHERWISE NOTED HEREIN.**

**4.**   **ATTACHMENT AND CANCELLATION**

This policy to be deemed continuous and covers all shipments of goods and/or merchandise and/or property made on and after **October 1, 2013** and on all goods and/or merchandise and/or property at risk at storage locations insured hereunder on and after said date but subject to cancellation by either party on 60 days written notice, except 10 days-notice for non-payment of premium, such cancellation, however, is not to prejudice any risks which had attached prior to the effective date of such notice except that any coverage on goods and/or merchandise and/or property at risk at storage locations insured hereunder shall terminate on said date.

1



**5.**   **CONVEYANCES:**

Per steamer and/or steamers and/or motor vessels and/or barges and/or land or air conveyances and all connecting conveyances including shipments by mail and/or parcel post, messengers and couriers.

NOTE: Wherever the words "ship", "vessel", "seaworthiness", "shipowner" or "vessel owner" appear in this policy, they are deemed to include also the words "aircraft", "airworthiness", and "aircraft owner".

**6.**   **GEOGRAPHICAL LIMITS:**

This policy covers all goods and/or merchandise and/or property, unless prohibited by United States of America law or United States of America governmental decree, at and from ports and/or places in the world to and at ports and/or places in the world directly or via ports and/or places in any order, including the risk of transshipment by land, air, water, or otherwise.

**EXCLUSIONS- applicable to all Transit and Inventory**
- Excluding countries and coverage that would be in violation of any US economic or trade sanctions such as but not limited to, those sanctions administered and enforced by the US Treasury Departments Office of Foreign Assets Control ("OFAC").

- Shipments into, through and within Pakistan and Afghanistan are specifically excluded from this policy (coverage cease when the cargo crosses the border)

- Coverage for land Conveyances from any Baltic port & /or terminal to Serkhetebad, Turgundi, Hairaton, Spitimat & /or Tajikistan is specifically excluded from this policy.

- Coverage is also specifically excluded for all storage locations in Afghanistan and Pakistan

**7.**   **PREMIUM:**

The consideration for all of the coverages provided in this policy, including contingent and extended coverages, unless otherwise agreed, is the premium payable for the primary coverage, as agreed.

**8.**   **VALUATION:**

Unless specifically provided for elsewhere in this policy, or instructions to the contrary are given or received by The Assured, the goods and/or merchandise and/or property insured under this policy shall be valued as follows:

**Valued at the highest valuation produced by either Clause A or B as follows:**

**A. Invoice value (premium included), including all charges in the invoice and including prepaid and/or guaranteed and/or advanced freight, if any plus 10%**

**OR**

2

B. The highest market value attained between the date of shipment and the earliest of the following dates, plus 10%.

1. Date of arrival of the carrying vessel at the port of destination
2. Date of the total loss of the vessel or the cargo
3. Date of report of the vessel being stranded, sunk, on fire, or in collision
4. Due date of arrival of the vessel at its port of destination, in respect to missing vessels.
5. In all other cases not specified above, the date the extent of loss becomes known to the Assured.

Above, less un-incurred duty and un-incurred or contingent freight charges, if any. The Market Value of commodities is to be determined by current market quotation in United States currency as published by the Journal of Commerce or other trade publications as may be agreed.

Privilege is granted to The Assured to insure in foreign currencies. When the privilege is exercised, the proceeds paid under this policy are payable in the same currencies, otherwise the proceeds are payable in United States dollars at the rate of exchange current on the date the above invoice was issued..

In the event The Assured receives written instructions for goods and/or merchandise and/or property to be valued on a basis differing from the above, then the goods and/or merchandise and/or property are to be valued in accordance with such instructions.

9. **LIMITS OF LIABILITY:**

Unless otherwise agreed This Assurer shall not be liable under this policy for more than:

| | |
|---|---|
| $50,000,000 | per any one conveyance, connecting conveyance, craft or at any place at any time except: |
| $ 2,500,000 | per any one railcar, not to exceed; |
| $25,000,000 | any one Train (except as a connecting conveyance) |
| $25,000,000 | per any one Truck, Trailer (except as a connecting conveyance); |
| $25,000,000 | per any one barge (except as a connecting conveyance, nor for more than $25,0000,000 in any one tow. |
| $25,000,000 | per occurrence (*) for Liquids within pipelines within the 48 contiguous states. |
| $ 1,000,000 | per occurrence(*) for movement of Natural Gas for US Energy Services (USES) on the Northern Natural Gas (NNG) Pipeline. |

(*) Occurrence is defined as sudden and accidental release of gas/liquid



If the total value at risk exceeds the limit of liability provided by this policy, The Assured shall nevertheless report the full amount at risk to The Assurer and shall pay full premium thereon, in consideration of which the principle of co-insurance is waived by This Assurer. Acceptance of such reports and premium by the company shall not alter or increase the limit of liability of The Assurer but The Assurer shall be liable for the full amount of covered loss up to but not exceeding the applicable limit of liability.

This Assurer shall pay in full claims for general average, salvage and special charges and for such expenses as are provided for in the Sue and Labor clause even though the sum insured may be less than the contributing value or actual value of the goods and/or merchandise and/or property insured under this policy.

**10.**     <u>**ACCUMULATION CLAUSE:**</u>

Should there be an accumulation of the interests insured hereunder beyond the limit(s) of liability expressed elsewhere in this policy by reason of any interruption of transit or circumstance beyond the control of the Assured's corporate risk manager or equivalent, or by reason of any casualty, or at a transshipping point, or on a connecting conveyance, This Assurer shall, provided notice of such accumulation is given to This Assurer as soon as practicable after it becomes known to The Assured's corporate risk manager or equivalent, hold covered such excess interest and shall be liable for the full amount at risk, but in no event shall This Assurer's liability exceed twice the limit of liability set forth in Clause 9.

**11.**     <u>**CONDITIONS OF COVERAGE:**</u>

Unless otherwise specified below, all goods and/or merchandise and/or property are insured:

(A)   Against all risks of physical loss or damage from any external cause whatsoever, except those risks that may be excluded by the F.C. & S. warranty S.R. &C.C. warranty and/or other warranties or exclusions specified in this policy, unless covered elsewhere herein, irrespective of percentage.

(B) <u>While "On Deck" of an ocean vessel and subject to the terms of an "On Deck" Bill of Lading, unless otherwise agreed:</u>

Free of particular average unless the vessel and/or craft be stranded, sunk, burnt, on fire or in collision with another ship or vessel, or loss of and/or damage to the interest hereby insured which may reasonably be attributed to fire or contact (other than collision with another ship or vessel) of the vessel and/or craft with any substance, ice included, other than water, but including jettison and/or washing and/or loss overboard, irrespective of percentage.

(C) Goods and/or merchandise shipped "On Deck" without the knowledge and consent of The Assured and subject to the terms and conditions of an "Under Deck" Bill of Lading shall be insured subject to the conditions of coverage reflected in clause 11 (A) above and rates and limits of liability as set forth in this policy.



Goods and/or merchandise shipped in containers and/or vans and/or lighters aboard ships shall be insured subject to the conditions of coverage reflected in clause 11 (A) above and rates and limit of liability as set forth in this policy, whether stowed under and/or on deck.

(D) Shipments of all Bulk Liquids: Guaranteed Outturn conditions shall act as the default coverage for all BULK LIQUID VESSEL shipments as below:

## BULK OIL CLAUSES - GUARANTEED OUTTURN

Against all risks of physical loss or damage from any external cause but extended to include leakage and/or shortage and /or difference in weight (or volume) and /or contamination, howsoever arising, excluding the risks excepted by the F.C.&S. and S.R.&C.C. Warranties unless covered elsewhere herein, from time of leaving tanks at port of shipment and while in transit and/or awaiting transit and until safely delivered in tanks at destination.  To also pay for all shortage and/or loss in weight, subject to the "Normal or Trade Loss" as defined below, based on a comparison of the certified outturn weights.

This insurance also to pay the insured value of any materials lost from connecting pipe lines, flexible or otherwise, in loading, transshipment or discharge.

Normal or Trade Loss:  With respect to all claims for differences between the shipped and outturn weights, this Insurer shall be liable only in excess of 0.5% of the portion insured hereunder of the shipped contents of each tank, which 0.5% shall be deemed to be normal or trade loss and shall be deducted from the shipped weight to determine the expected outturn.

In the event of there being more than one loss or accident of a similar nature to any one shipment coming within the terms and conditions of this policy, only one deduction of 0.5% shall be deducted from the shipped weight in determining the expected outturn.

Warranted by the Insured that ship/barge tanks be cleaned, tested and approved prior to loading of cargo and a certificate therefore be given by a surveyor approved by this Insurer at port of loading.  The cargo shall be analyzed, gauged and weighed and temperatures of cargo shall be taken at the time of and during loading and a certificate issued in accordance therewith.

In the event of cargo insured being intended for loading or discharge into tank barges, lighters or tank cars for conveyance to/from shore tanks, warranted by the Insured that prior to loading into such conveyance, a certificate that same has been approved shall be obtained from a surveyor approved by this Insurer.

Surveyor approved by this Insurer shall be notified and a survey made of the tanks prior to discharge for purpose of taking temperature of cargo at time of discharge and for the general purposes of checking, gauging or measurement of the outturn of the cargo from tanks.

Should the surveyor issue a certificate showing a difference in weight, the amount of such difference shall be determined by comparison of the survey at port of loading and the report of survey at discharge, which surveys shall be considered as final.

If a claim is to be filed for contamination, then in order to ascertain the measure of damage through contamination as provided for herein, a test or tests shall be made by a chemist approved by this Insurer.

5



With respect to such contamination losses, Underwriters shall be liable for the actual cost of reconditioning including all expenses incidental thereto which are necessary to bring the cargo back to its original condition, less, however, the normal expenses of refining in cases where the cargo was intended for refining. Underwriters are also to pay for loss in weight and depreciation on such part of the cargo which could not be brought back to its original condition. All such losses are payable irrespective of percentage.

All surveys and chemical analyses to be at the expense of the Insured except that in the event of loss, this Insurer shall be liable for the enhancement of the cost of surveys and/or analyses to determine the amount of the claim.

It is further agreed that surveys performed by qualified personnel of the Named Insured will be acceptable to this Insurer. Claims for contamination subject to confirmation by independent surveyor approved by this Insurer.

In the event the above survey warranties are not complied with, coverage provided will automatically be subject to **Bulk Oil Clauses, Form SP-13C as below:**

### BULK OIL CLAUSES (SP-13C) JAN 1962

1. The Assured are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the bills of lading and/or charter party. The seaworthiness of the vessel and/or craft as between the Assured and Assurers is hereby admitted, and the Assurers agree that in the event unseaworthiness or a wrongful act or misconduct of ship-owner, charterer, their agents or servants, shall directly or indirectly, cause loss or damage to the cargo insured by sinking, stranding, fire, explosion, contact with seawater, or by any other cause of the nature of any of the risks assumed in the policy, the Assurers will (subject to the terms of average and other conditions of the policy) pay to an innocent Assured the resulting loss. With leave to sail with or without pilots, and to tow and assist vessels or craft in all situations and to be towed.

2. Provided prompt notice be given the Assurers when such facts are known to the Assured and additional premium be paid if required, it is understood and agreed that in case of short shipment in whole or in part by the vessel reported for insurance hereunder, or if the goods be transhipped by another vessel or vessels, or be carried beyond or discharged short of destination, or in the event of deviation, or change of voyage, or any interruption or other variation of the voyage or risk beyond the control of the Assured, this insurance shall nevertheless cover the goods until arrival at the final destination named in the policy or certificate of insurance or until the subject matter insured is no longer at the risk of the Assured, whichever may first occur. No additional risks (whether of delay or of any other description) are insured under this clause, which is intended merely to continue the insurance in force against the same risks named elsewhere in this policy or certificate and if the risks of War, Strikes, Riots or Civil Commotions, or any of these risks, are insured against, the insurance against such risks shall not be extended by this clause to cover contrary to any express provision of such insurance.

3. Including all risks of transhipment if required and of craft to and from the vessel, each lighter, craft or conveyance to be considered as if separately insured; also to cover any special or supplementary lighterage at additional premium if required. The Assured is not to be prejudiced by any agreement exempting lightermen from liability.



4.  General Average, Salvage and Special Charges, as per foreign custom, payable according to foreign statement, and/or per York-Antwerp Rules and/or in accordance with the contract of affreightment, if and as required; or, failing any provision in or there be no contract of affreightment, payable in accordance with the Laws and Usages of the Port of New York; and it is agreed that in the event of salvage, towage or other assistance being rendered to the vessel and/or interest hereby insured by any vessel belonging in part or in whole to the same owner or under the same management, the value of such services (without regard to the common ownership or management) shall be ascertained by arbitration and the amount so awarded, insofar as applicable to the interest hereby insured, shall constitute a charge under this policy.

5.  In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever whether due to negligence or not, for which or for the consequences of which the Shipowner is not responsible by statute or contract or otherwise, these Assurers shall nevertheless pay Salvage and/or Special Charges incurred in respect of the interests hereby insured and shall contribute with the Shipowner in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred.

6.  It is agreed that no right of subrogation except through General Average shall lie against any vessel or craft, or in respect to any pipe lines, on which cargo hereby insured is being carried or in respect of which freight insured hereunder is at risk, belonging in part or in whole to a subsidiary and/or affiliated company.

7.  Against all risks whatsoever (excepting as hereinafter provided) excluding the risks excepted by the F. C. & S. and S. R. & C. C. warranties incorporated herein, from time of leaving tanks at port of shipment and whilst in transit and/or awaiting transit and until safely delivered in tanks at destination, but notwithstanding anything herein to the contrary, the Assurers are not liable for shortage and/or leakage and/or contamination (except as elsewhere in this policy pro- vided) unless caused by or arising out of the vessel or craft being stranded, sunk, burnt, in collision or in contact with any substance or thing (ice included) other than water, fire, explosion (howsoever and wheresoever occurring) or there be a forced discharge of cargo; pro- vided, however, that these Assurers are liable for contamination resulting from stress of weather.

It is agreed that notwithstanding anything herein to the contrary, this insurance is to pay the insured value of any oil lost from connecting pipe lines, flexible or otherwise, in loading, transshipment or discharge. Claims are to be paid irrespective of percentage, but subject to deduction for normal shortage.

8.  This insurance is also especially to cover any loss of and/or damage to the interest insured hereunder, including shortage and/or leakage and/or contamination, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the Master, Mariners, Mates, Engineers or Pilots; provided, however, that this clause shall not be construed as covering loss arising out of delay, deterioration or loss of market, unless otherwise provided elsewhere in this policy.

9.  These Assurers also agree that any action or proceeding against them for the recovery of any claim under or by virtue of this insurance shall not be barred if commenced within the time prescribed therefor in the Statutes of the State of New York.



10.   The warranty that vessel be loaded under inspection of surveyors appointed by the underwriters is hereby waived.

11.   In the event that this Policy is extended to cover property prior to the attachment or subsequent to the expiration of the cover provided by the attached Marine Extension Clauses, such extension shall always be subject to the following exclusion unless specifically otherwise stated in writing signed by this company in the extension endorsement or otherwise:

This Company shall not be liable for any claim for loss, damage or expense arising directly or indirectly from any nuclear incident, reaction, radiation or any radio-active contamination, all whether controlled, or uncontrolled, occurring while said property is within the United States or any territory of the United States, the Canal Zone or Puerto Rico, or arising from a source therein, and whether the loss, damage or expense be proximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, if this Policy insures against the peril of fire, then direct loss by fire resulting from nuclear incident, nuclear reaction, or nuclear radiation or radioactive contamination is insured against by this Policy.

12.   Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or by any mine or torpedo, also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

13.   Warranted free of loss or damage caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder.

14.   If this policy is issued for a period of time, it is agreed that should the vessel at the expiration hereof be at sea, or in distress, or at a port of refuge or of call, the interest hereby insured shall, pro- vided previous notice be given to the insurers, be held covered at a pro rata premium until arrival at port of destination.

15.   Where goods are shipped under a bill of lading containing the so-called "Both to Blame Collision" Clause these Assurers agree, as to all losses covered by this insurance, to indemnify the Assured for any amount (up to the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted the Assured agree to notify the Assurers who shall have the right at their own cost and expense, to defend the Assured against such claim.

8



**With respect however to shipments of aviation jet fuel (Jet A-1 etc) coverage is as above except there is no coverage for contamination and/or loss of specification caused by copper alloy heating coils.  This applies to all BOC clauses.**

**(E) Pipeline Shipments:**

Coverage is provided hereunder in respect of movements of liquids and gases (as per limits of liability clause herein) in pipelines, except where such movement is part of loading or unloading operation, against all risks of physical loss of or damage to the subject matter insured from any external cause, with coverage to apply from the time the subject matter first enters the pipeline until discharged from pipeline at destination. Such coverage is deemed to include physical loss or damage in consequence of explosion of or defects in and/or failures of breakage of pipelines, tubes, tanks pipelines, taps, valves, connections and other fittings and also physical loss or damage as a consequence of wrong or mistakenly opening or closing of taps and/or valves or by carrying our incorrect connections.

Movements of liquids and gases (as per limits of liability clause herein) in pipelines during loading and/or discharge operations shall be considered to be part of the overall transit movement insured hereunder and be subject to the applicable insuring conditions and deductibles relating to such transit.

Subject to deductible of 0.50% with a minimum deductible of $100,000 applied as per Deductible Clause elsewhere herein.

This policy HOWEVER, shall not cover loss or damage caused by or attributed to:
Mysterious disappearance, unexplained shortage or loss in weight, saturation, absorption or loss or shortage incurred from normal operations disclosed on taking inventory

12.    **DEDUCTIBLE:**

Except or as noted otherwise herein (Brazil and Pipeline Transit coverages) the following deductibles shall apply:

From each claim for loss or damage, the following amounts shall be deducted:

**Transit-**       0.5% of the insured value of the goods in transit at the time of loss

**Storage-**       0.5% of the insured values of the goods **(subject to a MINIMUM of $100,000)** in storage at the time of loss

**Flood,
Windstorm, &
Earthquake:**   2.5% of the insured value of the goods in storage at the time of loss subject to a minimum deductible of **$250,000** per occurrence

However, these deductibles shall not apply to (i) survey fees, (ii) general average, salvage or special charges, (iii) loss, damage or expense covered under the Sue and Labor Clause, or under the Debris Removal Clause or the S.R. & C.C. Endorsement.

9



13.    **PERILS CLAUSE:**

Touching the adventures and perils which This Assurer is contented to bear, and takes upon itself, in this voyage, they are of the seas, fires, jettisons, assailing thieves, barratry of the Master and Mariners, and all other like perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and/or merchandise and/or property, or any part thereof except as may be otherwise provided for herein or endorsed hereon.

14.    **WAREHOUSE TO WAREHOUSE:**

This insurance attaches from the time the goods and/or merchandise and/or property leaves the warehouse and/or store or other location at the place named in the policy, special policy, certificate or declaration for the commencement of the transit and continues until the goods and/or merchandise and/or property are delivered to final warehouse store or other location at the destination named in the policy, special policy, certificate or declaration or until the expiry of 15 days or (30 days if the destination to which the goods and/or merchandise and/or property are insured is outside the limits of the port) whichever shall first occur. The time limits referred to above to be reckoned from midnight of the day on which the discharge over the side, of the goods and/or merchandise and/or property hereby insured from the overseas vessel is completed. Held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the above time limits arising from circumstances beyond the control of The Assured.

*NOTE: It is necessary for The Assured to give prompt notice to This Assurer when the Risk Manager or equivalent become aware of an event for which they are "held covered" under this policy and the right to such cover is dependent on compliance with this obligation.*

15.    **MARINE EXTENSION CLAUSES:**

Notwithstanding anything to the contrary in or endorsed on this policy, it is understood and agreed that the following terms and conditions shall apply to all shipments which become at risk hereunder:

(1)    This insurance attaches from the time the goods and/or merchandise and/or property leave the warehouse at the place named in the policy, special policy, certificate or declaration for the commencement of the transit and continues until the goods and/or merchandise and/or property are delivered to the final warehouse at the destination named in the policy, special policy, certificate or declaration, or a substituted destination as provided in Clause (3) hereunder.

(2)    This insurance specially to cover the goods during,

(i)    deviation, delay, forced discharge, re-shipment and transshipment.

(ii)   any other variation of the adventure arising from the exercise of a     liberty granted to the shipowner or charterer under the contract of affreightment.

10



(3)    In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than original insured destination, the insurance continues until the goods and/or merchandise and/or property are sold and delivered at such port or place; or, if the goods and/or merchandise and/or property be not sold but are forwarded to the original insured destination or to any other destination this insurance continues until the goods and/or merchandise and/or property have arrived at final warehouse as provided in Clause (1).

(4)    If while this insurance is still in force and before the expiry of 15 days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods and/or merchandise and/or property are re-sold (not being a sale within the terms of Clause (3) and are to be forwarded to a destination other than that covered by this insurance, the goods and/or merchandise and/or property are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned 15 days, whichever shall first occur. If a sale is effected after the expiry of the aforementioned 15 days while this insurance is still in force the protection afforded hereunder shall cease as from the time of the sale.

(5)    Held covered, at a premium to be arranged, in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

(6)    This insurance shall in no case be deemed to extend to cover loss, damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

(7)    It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured.

All other terms, conditions and warranties of the policy not in conflict with the foregoing remain unchanged, it being particularly understood and agreed that the F. C. & S. warranty specified in this policy remains in full force and effect, and that nothing in the foregoing shall be construed as extending this insurance to cover any risks of war or consequences of hostilities.

16.    **<u>BUYERS AND SELLER'S INTEREST:</u>**

Regardless of the terms of purchase by The Assured from suppliers or the terms of sale by The Assured to their customers, this policy, subject to all of its terms and conditions, attaches and fully covers the goods and/or merchandise and/or property continuously from warehouse to warehouse. This Assurer hereby acknowledge the insurable interest of The Assured and their liability thereto in the event of claims for loss or damage.

In the event a claim arises under this clause, The Assured agrees to use all reasonable means to recover the full amount of such loss from the importer/exporter in accordance with the terms of purchase/sale. Should a claim be paid under this clause, The Assured agrees to subrogate to this Company all rights of recovery from the importer/exporter, importer's/exporter's insurance, or other responsible party.



17.   **SOUTH AMERICAN CLAUSE:**

With respect to shipments of goods and/or merchandise and/or property to South America and notwithstanding anything contained elsewhere herein to the contrary (particularly the Warehouse to Warehouse and Marine Extension Clause), the insurance provided hereunder shall continue to cover for sixty (60) days, (ninety (90) days on shipments via the Magdalena River) after completion of discharge of the overseas vessel at port of destination or until the goods and/or merchandise and/or property are delivered to the final warehouse at destination, whichever may first occur, and shall then terminate.

The time limit referred to above to be reckoned from midnight of the day on which the discharge of the overseas vessel is completed.

18.   **ERRORS AND OMISSIONS:**

This policy shall not be vitiated by any unintentional delay, error, omission or oversight in making any declaration that is required to be made under any provision contained in or endorsed on this policy provided a correct declaration is communicated to This Assurer as soon as practicable after the delay, error, omission or oversight becomes known to The Assured's corporate risk manager or equivalent, and premium paid, if required by This Assurer.

19.   **DEVIATION:**

This insurance shall not be vitiated by any unintentional error in description of vessel, voyage or interest, or by deviation, over carriage, change of voyage, transshipment or any other interruption of the ordinary course of transit from causes beyond the control of The Assured. It is agreed, however, that any such error, deviation or other occurrence mentioned above shall be reported to This Assurer as soon as practical.

20.   **CHANGE OF DESTINATION/DEVIATION DELAY CLAUSE:**

Notwithstanding anything to the contrary herein, including the Warehouse to Warehouse and Marine Extension Clause, in case of voluntary change of destination and/or deviation and/or delay, within The Assured's control, the insured goods are held covered at an additional premium to be agreed, if required; The Assured agreeing to report, as soon as possible, all such events to This Assurer.

In case of short shipment in whole or in part by the vessel reported for insurance hereunder, This Assurer agrees to hold The Assured covered against the risks insured hereunder until arrival at the final destination to which the goods are insured or until the goods are no longer at the risk of The Assured.

21.   **CONSOLIDATION, REPACKING :**

In consideration of premium as agreed and notwithstanding anything to the contrary herein, including the Warehouse to Warehouse and Marine Extension clause, the insurance provided under this policy shall also cover the goods and/or merchandise and/or property insured while on premises of freight forwarders, export packers, consolidators, truckers, warehousemen, suppliers, distribution centers, or others, including the Assured's premises, for the purpose of storage, unpacking, packing or



repacking, consolidation, deconsolidation, containerization, decontainerization, distribution or otherwise anywhere in the World whether prior to loading or after discharge from overseas vessel for a period not exceeding sixty (60) days after arrival at such premises. Thereafter the insurance continues whilst in transit until the goods and/or merchandise and/or property are delivered to the final warehouse at destination as provided elsewhere herein. Held covered at a premium to be arranged, if required, in the event of delay in excess of the above time limit

**22.   SHORE PERILS:**

Unless otherwise agreed, goods and/or merchandise and/or property insured hereunder while on the docks, wharves, quays or elsewhere on shore and/or during land transportation are also covered against loss, damage or expense caused by fire, sprinkler leakage, lightning, cyclone, hurricane, earthquake, windstorm, hail, landslide, volcanic eruption, flood, rising water, aircraft, objects falling from aircraft, collision, derailment and/or any accident to the conveyance, collapse and/or subsidence of docks, wharves, quays and/or structures notwithstanding any average warranty herein.  Nothing in the foregoing shall be construed to include such risks as are excepted by the Free of Capture and Seizure and the Strikes, Riots and Civil Commotions Warranties.

**23.   WAREHOUSING, FORWARDING CHARGES:**

In the event of frustration, interruption and/or termination of the insured voyage from causes beyond the control of the Assured, this policy will pay all extra expenses incurred by the Assured forwarding the goods to the original or substituted final destination. In no case shall this company be liable under this clause for **no** more than 25% of the insured value of the shipment.

**24.   GENERAL AVERAGE:**

General Average, Salvage and Special Charges and expenses are payable as provided in the contract of affreightment or in accordance with laws and usages at the port of destination or in accordance with foreign statement.

**25.   LOADING/UNLOADING:**

This insurance is extended to cover, subject to the applicable insuring terms, conditions and warranties set forth elsewhere in this policy, goods and/or merchandise and/or property intended for shipment (i) during the loading process prior to dispatch (including, but not limited to, into containers, trailers and rail cars) and continuing thereafter while they await  the commencement of the transit and (ii) after they arrive at the final destination, and continuing thereafter, until they are unloaded (including, but not limited to, from containers, trailers and rail cars) and throughout the unloading process, but not exceeding 7 days after arrival at final destination, unless covered elsewhere herein.

**26.   FPA:**

Unless otherwise agreed this insurance is free of particular average unless the vessel and/or craft be stranded, sunk, burnt, on fire or in collision with another ship or vessel, or loss of and/or damage to the interest hereby insured which may reasonably be attributed to fire or contact (other than collision with another ship or vessel) of the vessel and/or craft with any substance, ice included, other than water, but including jettison and/or washing and/or loss overboard, irrespective of percentage.

13



27. **INSUFFICIENCY OF PACKAGING:**

In the event of a claim being made for loss or damage which is alleged to be caused by insufficiency or unsuitability of packing or preparation of the subject matter insured, This Assurer hereby agrees that it will not assert such alleged insufficiency or unsuitability as a defense against the claim in any case where the packing or preparation was carried out by a party other than The Assured and the insufficiency or unsuitability arose without The Assured's privity or knowledge. For the purpose of this clause, "packing" shall be deemed to include, but not limited to, stowage in a container, trailer, railcar or liftvan.

28. **SHORTAGE FROM CONTAINER ETC:**

This Assurer is also to pay for shortage of contents, meaning thereby, the difference between the number of items loaded or alleged to have been loaded in the container, trailer, railcar or liftvan as per the shipper's or supplier's invoice or packing list or any other accepted document of The Assured's trade and/or business, and the number of items removed therefrom and received by The Assured, consignee or their agent, at the time the container, trailer, railcar or liftvan is unloaded howsoever, wheresoever and whensoever occurring, notwithstanding the container seals may appear to be intact.

29. **CONCEALED DAMAGE:**

Should delay occur in opening of packages and/or cargoes and/or cases after arrival of the goods and/or merchandise and/or property at destination, as provided for in the policy, and damage found when packages are eventually opened, but not later than ninety (90) days after arrival at location or warehouse at destination, such damage shall be deemed to have occurred during the currency of this insurance. Claims on such goods to be adjusted and paid by This Assurer in the same manner as though the packages had been opened immediately upon their arrival.

If damage is discovered after the 90 day period, but the damage occurred during the period of coverage under this policy, the burden to show when the damage occurred shall revert to The Assured.

Packages showing evidence of damage are to be opened immediately upon arrival at destination and exceptions noted on the carrier's receipt (s).

Nothing herein, however, shall be construed to limit the coverage already provided particularly but not limited to the "Warehouse to Warehouse Clause" and "Marine Extension Clause" of the policy.

30. **SUE & LABOR CLAUSE:**

In case of any imminent or actual loss or misfortune it shall be lawful and necessary to and for The Assured his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and/or merchandise and/or property, or any part thereof, without prejudice to this insurance; nor shall the acts of The Assured or This Assurer, in recovering, saving and preserving the goods and/or merchandise and/or property insured, in case of disaster, be considered a waiver or an



acceptance of abandonment. This Assurer will pay all such sue and labor expenses subject to the limit of liability set forth elsewhere in this policy.

**31.  INCHMAREE CLAUSE:**

This insurance is also specially to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the Master, Mariners, Mates, Engineers or Pilots.

**32.  EXPLOSION CLAUSE:**

The risks covered by this policy are to include loss, damage or expense resulting from explosion, howsoever and wheresoever occurring, irrespective of percentage, but excluding the risks excepted by the F. C. & S. and Strikes, Riots and Civil Commotions warranties, appearing elsewhere in this policy.

**33.  BOTH TO BLAME COLLISION CLAUSE:**

Where goods are shipped under a Bill of Lading containing the so-called "Both to Blame Collision Clause" This Assurer agrees as to all losses covered by this insurance, to indemnify The Assured for any amount (not exceeding the amount insured) which The Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted The Assured agrees to notify This Assurer who shall have the right, at their own cost and expense, to defend The Assured against such claim.

**34.  CARRIER CLAUSE:**

Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

**35.  CRAFT, ETC.:**

Including the risk by craft, raft and/or lighter to and from the vessel. Each craft, raft and/or lighter to be deemed separately insured. Also to cover any special or supplementary lighterage to take the goods and/or merchandise and/or property to or from the warehouse. The Assured is not to be prejudiced by any agreement exempting lightermen from liability.

**36.  NEGLIGENCE:**

The Assured is not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading, Charter Party and/or contract of affreightment or other contract. The seaworthiness of the vessel, as between The Assured and This Assurer, is hereby admitted and the wrongful act or misconduct of the shipowner, charterer, or carrier or his servants causing loss shall not defeat recovery under this policy.

15



37.   **FRAUDULENT BILLS OF LADING:**

This policy also covers physical loss incurred by The Assured through the acceptance by The Assured, its Agents or the shipper of fraudulent bills of lading, shipping receipts, messenger receipts, warehouse receipts or other shipping documents.

38.   **WAIVER AND/OR RELEASE:**

Privilege is given The Assured to accept contracts of carriage, charters and/or Bill of Lading and/or receipts, from common carriers and/or owners and/or operators of tugs, barges and/or lighters or terminals, containing usual waivers and/or releases of liabilities, provided such acceptance is made prior to any known or reported loss or accident. Privilege is also granted The Assured to execute railroad sidetrack agreements with or without a release of liability.

The Assured is granted the privilege of accepting contracts of carriage, charters and/or Bills of Lading containing waivers and/or releases of liabilities from owners and/or operators of tugs, barges and/or lighters involved in a sea passage.

39.   **PARAMOUNT WARRANTIES:**

The following warranties shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these warranties and expressly assumes the said risks.

(A)   F.C. & S. Warranty (April 3, 1980)

**Notwithstanding anything herein contained to the contrary, this insurance is warranted free from:**

(1) Capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

(2) All loss, damage or expense, whether in time of peace or war, caused by (i) any weapon of war employing atomic or nuclear fission and/or fusion and/or other reaction or radioactive force or matter or (ii) any mine or torpedo.

(3)   All consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power.

(4) The consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power; or piracy.

16



B.  SR & CC WARRANTY

**Notwithstanding anything herein contained to contrary, this insurance is warranted free from loss, damage or expense caused by or resulting from:**

(1)  strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorders;

(2) vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

40.   **CLAUSE PARAMOUNT NUCLEAR EXCLUSION:** (AIMU APRIL 1, 1991)

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage, or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused.  However, subject to all provisions of this policy, if this policy insures against fire, then direct physical damage to the property insured located within the United States, or any territory of the United States or Puerto Rico, by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C.&S. Warranty of this policy.

Nothing in this clause shall be construed to cover any loss, damage, liability, or expense caused by nuclear reaction, radiation, or radioactive contamination arising directly or indirectly from the fire mentioned above.

41.   **DELAY:**

This insurance is warranted free from, and shall not cover, loss of market or loss, damage, deterioration or expense arising from delay, regardless of whether such delay is caused by a risk insured against or otherwise, unless such risks are expressly assumed elsewhere in this policy.

42.   **CONTAINER DEMURRAGE CHARGES:**

This policy shall cover demurrage charges and/or late penalties assessed against, and paid by, The Assured for late return of containers, trailers, railcars or liftvans when they are retained by the Assured at the instruction of The Assurer for inspection by The Assurer's surveyor in investigation of loss or damage.

The time period for which The Assurer shall be liable for said charges and/or penalties shall begin at the time The Assurer instructs The Assured to retain the containers for inspection and end at the time The Assurer's surveyor instructs The Assured to return the containers.

43.   **FUMIGATION:**

In the event of the conveyance and/or location being fumigated by order of a properly constituted authority and loss or damage to the interest insured hereunder arises therefrom, This Assurer agrees to indemnify The Assured for such loss or damage, and The Assured hereby agrees to subrogate to This Assurer any recourse they may have for recovery of such loss or damage from others.

44.   **RECOOPERING/REPACKING:**

In the event the packaging of the goods and/or merchandise and/or property insured under this policy is damaged due to a risk insured against as a result of which it is necessary, in the sole judgment of The Assured, to recooper or provide new packaging, This Assurer will pay the cost of recoopering and/or the cost of new packaging.

In respect of packaging which falls outside the above provisions, it is agreed that should the outer packaging be damaged from an insured risk which renders the insured goods and/or merchandise and/or property unfit for on-shipment or distribution, irrespective of the final destination shown herein, This Assurer will pay the expense of reasonable repackaging, provided such damage occurred during the currency of this insurance.

45.   **BRANDS AND TRADEMARKS:**

In case of damage to goods and/or merchandise and/or property insured under this policy bearing a brand or trademark, the sale of which in any way carries or implies a guarantee, the salvage value of such damaged goods and/or merchandise and/or property shall be determined after removal of all brands and trademarks.

With respect to packaging from which the brand or trademark cannot be removed, the contents shall be transferred into plain packaging, subject always to the consent of The Assured.

With respect to any goods and/or merchandise and/or property for which it is deemed by The Assured to be impractical to destroy all evidence of The Assured's connection therewith, This Assurer agrees to waive its right to salvage and The Assured is granted the option to destroy such damaged goods and/or merchandise and/or property.  If the assured exercises this option to destroy the goods and/or merchandise and/or property this Assurer shall be given the opportunity to have a representative in attendance.

The cost to remove brands and trademarks, as well as the cost to remove the contents from their original packaging and transfer them into plain packaging, shall be borne by This Assurer, but in no event shall This Assurer be liable for more than the insured value of the damaged goods and/or merchandise and/or property.

46.   **LABELS:**

In case of damage affecting labels, capsules or wrappers, This Assurer, if liable therefor under the terms of this policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers and the cost of reconditioning the goods,

18

but in no event shall This Assurer be liable for more than the insured value of the damaged merchandise.

47.   **PAIR AND SETS:**

It is understood and agreed that the loss of or damage to any one item of the goods and/or merchandise and/or property insured under this policy which consist of items in a pair or set, shall constitute a total loss of such pair or set.

48.   **SIGHT DRAFT EXTENSION:**

This policy is extended to cover shipments insured hereunder and made under sight draft, time draft, open account or similar terms while temporarily delayed in the country of destination for not exceeding sixty (60) days from date of arrival at destination, or until draft is paid or until delivered to buyer's warehouse or other warehouse designated by the buyer, whichever may first occur.

This extension of coverage to apply whether the merchandise is in due course of transit or otherwise and regardless of whether such delay is for the convenience of The Assured or upon their instructions. Held covered for an additional period of time to be agreed at additional premium to be named, provided The Assured gives notice of all shipments so held as soon as practicable.

49.   **REFUSED/RETURNED SHIPMENTS:**

In the event of refusal or inability of The Assured or other consignee to accept delivery of merchandise insured hereunder, this insurance is extended to cover such shipments during delay and/or return or reshipment, or until received by The Assured, or until otherwise disposed of.

50.   **DEBRIS REMOVAL:**

This policy covers expenses incurred for the removal and disposal of all debris of the property covered hereunder which may be occasioned by loss caused by any of the perils insured, except that This Assurer shall not be liable under this clause for more than **10% of the insured value, and in no event more than $4,000,000** of the goods and/or merchandise and/or property. Nothing contained herein shall be construed to cover any clean up expenses for which the assured may be liable under any pollution statute.

51.   **PARTIAL LOSS CLAUSE:**

In case of a partial loss to the goods and/or merchandise and/or property insured under this policy caused by risks insured against, the loss shall be determined by a separation of sound and damaged goods and/or merchandise and/or property and the amount of recoverable loss shall be determined by:

a)      an agreed estimate (by survey) of the percentage of damage of such damaged portion, or if such agreement is not practicable,

b)      then such damaged portion shall be sold at public sale, in which event the amount of the loss shall be the difference between the net amount so realized by the sale and the insured value of the portion so sold.

**52.     CONSTRUCTIVE TOTAL LOSS:**

No recovery for a constructive total loss shall be had under this policy unless (i) the insured goods and/or merchandise and/or property are reasonably abandoned on account of their actual total loss appearing to be unavoidable, or (ii) because they cannot be preserved from actual total loss without incurring an expenditure which, if incurred, The Assured reasonably believes would exceed the expected value of the goods and/or merchandise and/or property.

**53.     MACHINERY CLAUSE:**

In case of loss or damage to any part of a machine or other article consisting, when complete for sale or use, of several parts, then in case of loss or damage covered by this insurance to any part of such machine or article, This Assurer shall be liable only for the proportion of the insured value applicable to the part or parts lost or damaged, or at The Assured's option, for the cost and expense of replacing, duplicating, assembling, or repairing the lost or damaged part or parts lost or damaged (including duty and/or any expediting, labor or installation charges) so that the machine or article is restored to its condition at the time of shipment. However, in no event shall these Assurers be liable for more than the total value of the machine.

**54.     CONTROL OF DAMAGED GOODS AND/OR MERCHANDISE AND/OR PROPERTY:**

Notwithstanding anything to the contrary contained elsewhere in this policy, it is understood and agreed that in case of physical damage to goods and/or merchandise and/or property from an insured peril, The Assured exercising a reasonable discretion, shall judge whether the goods damaged are fit for use as originally intended.

Any damaged goods which are unfit for sale as deemed by any governmental regulatory body / agency, or where the only means of determining the existence or extent of damage is through destructive testing, shall be treated as a constructive total loss.

The Assured shall dispose of the goods and/or merchandise and/or property to its best advantage with this Assurer being entitled to its share of the net proceeds resulting from such disposition, or if deemed necessary, the goods and/or merchandise and/or property shall be destroyed after consultation with this Assurer, who shall be given the opportunity to have a representative in attendance during such destruction.

However in no event shall payment under this clause exceed the Assured's selling price, plus any pre-paid and/or advanced and/or guaranteed freight if not included in the sale price less all discounts and unincurred expenses as of the date of loss.

**55.     NOTICE OF LOSS:**

Unless instructions have been given to the contrary, The Assured shall report to Willis Marine for transmission to This Assurer, or to The agents of This Assurer if there be one

at or near the place where the loss occurs or expenses are incurred or, if there be none in the vicinity, to the correspondent of the American Institute of Marine Underwriters or to Lloyd's Agent, every loss or damage which may become a claim under this insurance as soon as may be practicable after it becomes known to The Assured's corporate risk manager or equivalent.

56.   **PAYMENT OF LOSS:**

In case of loss under this insurance, same to be paid within thirty (30) days after satisfactory proof of loss and proof of interest has been filed with This Assurer.

Notwithstanding the foregoing, where such proofs have been established and only the final amount of claim cannot be determined within the thirty days, The Assurer shall advance as a loan to The Assured an agreed amount not to exceed 75% of the provisional claim amount. Any amount so advanced in excess of the final claim amount is to be refunded to The Assurer by The Assured.

It is also agreed that claims for loss of or damage to insured goods and/or merchandise and/or property falling within the scope of this policy which amount to less than $2,500. as adjusted, shall be paid by This Assurer within 10 days following the submission of the following applicable supporting documents:

(a)     bill of lading or air waybill or warehouse receipt;
(b)     commercial invoice;
(c)     claim against carrier/warehouse/other responsible party;
(d)     certificate of insurance, if applicable
(e)     any writing stating that a loss has occurred, e.g., (but without limitation) statement of claim from The Assured or its customer, or exceptions taken on delivery if included with original submission or customer credit memo.

If the terms of this policy provide coverage for loss due to non-delivery, then in the event of a non-delivery claim above $2,500 in which the carrier involved has not or will not provide a confirmation of non-delivery within a reasonable time, This Assurer agrees to advance to The Assured the amount of loss without interest pending receipt of the confirmation of non-delivery from the carrier. Repayment of the loss to The Assurer is conditional upon and only to the extent of the amount made good in recovery, either by The Assured or by The Assurer, taking into account pro-ration of recovery between Assurers liability and Assured's retention, in the event of deductible being applicable. For the purposes of this paragraph, the definition of "Reasonable Time" shall be one month after The Assured's written request for confirmation of non-delivery from the carrier.

57.   **INTERRUPTION OF TRANSIT OF DAMAGED GOODS:**

It is agreed that goods taken out of ordinary transit upon instructions of surveyors appointed by or on behalf of This Assurer for the purpose of establishment of loss or damage, shall be held covered, subject to the original terms and conditions applying to such shipment, without payment of additional premium or advice to This Assurer, during such interruption or suspension of transit until disposed of by delivery to and acceptance by the original consignee or by sale to others or otherwise.



58.  **EXPEDITING EXPENSES:**

In the event of loss or damage, this Policy is extended to cover not only the cost or expense of replacing or duplicating the lost or damaged part or parts and/or repairing the machine or product, but also all reasonable expediting expenses to permit prompt replacement of lost or damaged material, including but not limited to, Air Express and/or Air Freight charges, overtime repair costs and other additional expenses, including duties, taxes and destination charges.

59.  **DELIBERATE DAMAGE- POLLUTION HAZARD:**

This insurance is extended to cover, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under the Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

This agreement shall not increase the Limits of Liability provided for elsewhere in the Policy.

60.  **DELIBERATE DAMAGE - SERVICES:**

This insurance also covers, notwithstanding the F.C. & S. warranty specified in this policy, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this policy, physical loss of and damage to the goods and/or merchandise and/or property arising out of the performance of inspection duties by customs service agents or other duly constituted governmental agencies.

61.  **BROKER'S CLAUSE:**

It is a condition of this Policy, and it is hereby agreed that The Assured's Brokers, Willis Marine shall be deemed to be exclusively the agents of The Assured and not of This Assurer. Any notice given or delivered by or on behalf of This Assurer to the said Brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to The Assured.

62.  **DECLARATION OF RISKS:**

Authority is hereby given The Assured to issue and countersign This Assurer's Certificates and/or special policies (including endorsements thereto) on any and/or all shipments insured hereunder, but only subject to the terms and conditions of this policy, it being understood and agreed that all certificates and/or special policies and/or endorsements shall be countersigned by a duly authorized representative of The Assured. Shipments on which certificate and/or special policies are not required may be reported by special declaration forms furnished to The Assured.

It is a condition of this policy that The Assured shall declare to Willis Marine as Brokers for the Assured, for transmission to this Assurer, as soon as practicable, unless otherwise agreed, copies of all certificates and/or special policies, declarations and endorsements



for each and every shipment coming within the terms of this policy, whether arrived or not.

**63.    LETTER OF CREDIT CLAUSE:**

Permission is also granted to The Assured to attach the London Institute Cargo Clauses (A, B and C) and War, Strikes, Riots and Civil Commotions Clauses dated 1/1/82 or other London or American Institute Clauses to policies and/or certificates of insurance where such clauses are required by the terms of sale, letter of credit or other banking requirements. Such clauses are deemed to be added to this policy in these instances.

The difference in conditions between such Institute Clauses and this policy are covered hereunder.

**64.    INSPECTION OF RECORDS:**

This Assurer, or its agent, shall have the privilege at any time during business hours to inspect the records of The Assured as respects shipments coming within the terms of this Policy. This company agrees to give The Assured a minimum 7-day written notification of their intent to exercise this privilege. This privilege expires twelve (12) months after final termination of this policy.

**65.    DUTY AND/OR COLLECT FREIGHT:**

This insurance also covers, subject to policy terms of average, the risk of partial loss by reason of perils insured against on the import duties imposed on property insured hereunder and Collect Freight (unless guaranteed or payable "vessel lost or not lost"), it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, and/or freight shall attach as an additional insurance upon the goods from the time such import duty and/or freight is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in this policy shall be applied separately to such increased value.

If required herein, a separate amount shall be reported sufficient to cover the said duty, and/or freight and upon which the rate of premium shall be an agreed percentage of the merchandise rate(s) appearing in the rate schedule.

The Assured will, in all cases, use reasonable efforts to obtain abatement or refund of import duties paid or claimed in respect to goods lost, damaged or destroyed. It is further agreed that The Assured shall, when This Assurer so elects, surrender the merchandise to the Customs Authorities and recover import duties thereon as provided by law, in which event the claim under this policy shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on import duty and/or freight shall terminate at the end of the import movement covered under this policy (including the Warehouse to Warehouse and/or Marine Extension Clauses) but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the storage or transit subsequent thereto.

23

66.   <u>OTHER INSURANCE:</u>

In case the goods and/or merchandise and/or property, insured under this policy are covered by other insurance (except as hereinafter provided), the covered loss, damage or expense shall be collected from the several policies in the order of the date of their attachment.

Insurances attaching on the same date are deemed simultaneous and are to contribute pro rata; provided, however, that where any fire insurance, or any insurance (including fire) taken out by any carrier or bailee (other than The Assured) is available to the beneficiary of this policy, or would be so available if this insurance did not exist, then this insurance shall be void to the extent that such other insurance is or would have been available.

It is agreed, nevertheless, that where This Assurer is thus relieved of a liability because of the existence of other insurance, This Assurer shall receive and retain the premium payable under this policy and, in consideration thereof, shall guarantee the solvency of the companies and/or Assurers who issued such other insurance and the prompt collection of the loss, damage or expense thereunder, but only to the same extent that This Assurer shall have been relieved of liability by reason of the terms of this Clause and not exceeding, in any case, the amount which would have been collectible under this policy if such other insurance did not exist.

67.   <u>DIFFERENCE IN CONDITIONS:</u>

With respect to goods and/or merchandise and/or property purchased by The Assured on C.I.F. or similar terms, where transit insurance is arranged by the seller or others, this insurance is extended to cover the difference in the terms, conditions and warranties of such other insurance and the terms, conditions and warranties of this insurance, if the goods and/or merchandise and/or property would otherwise have been insured hereunder.

All goods and/or merchandise and/or property insured under this Clause shall be valued as per the valuation provisions set forth elsewhere in this policy.

It is noted and agreed that where The Assured is obliged by legislation or otherwise to arrange transit insurance locally, it shall continue to have the full benefit and protection of this insurance for any difference between this insurance and the terms, conditions and warranties in the insurance arranged elsewhere.

It is agreed that nothing in this Clause shall be construed to extend the obligation of This Assurer to pay more than the limit(s) of liability set forth elsewhere in this policy.

68.   <u>GUARANTEE OF COLLECTIBILITY:</u>

With respect to all goods and/or merchandise and/or property purchased by The Assured on C.I.F. or similar terms, where the seller is required to furnish transit insurance, This Assurer guarantees collection of any claim recoverable under the terms, conditions and warranties of the seller's transit insurance, but not exceeding the terms, conditions or limits of this policy.

In no event shall this insurance inure to the benefit of the seller or his Assurer, and The Assured agrees to make, and will make, all reasonable efforts to collect the full amount of



any loss, damage or expense from the seller and his Assurer, but in the event The Assured is unsuccessful in making a recovery, This Assurer will advance to The Assured the amount of the uncollected loss, damage or expense as a loan without interest.

Such advance shall be repayable upon, but subject to and only to the extent of (i) the receipt of the purchase price by The Assured or (ii) any recovery received by The Assured from insurance effected by the seller or otherwise.

**69.   F.O.B., FAS., ETC., SHIPMENTS:**

This insurance is extended to cover goods and/or merchandise and/or property sold by the Assured on F.O.B., F.A.S., Cost and Freight or similar terms whereby the Assured is not obligated to furnish marine insurance. This policy attaches subject to its terms and conditions and continues until the goods and/or merchandise and/or property are loaded onto the primary conveyance or until The Assured's interest ceases.

**70.   INCREASED VALUE AND/OR PROFITS INSURANCE:**

Additional Insurance and/or Increased Value Insurance and/or Profits Insurance, on shipments purchased by The Assured on C.I.F. or similar terms whereby the Assured is not required to provide marine insurance are covered hereunder, subject to this policy's terms and conditions, as per the following conditions:

(a)   To pay the same percentage of loss on additional insurance and/or increased value and/or profits insured hereunder as The Assurer would pay on cargo insured subject to the terms and conditions of this policy but in the event the goods on which the additional insurance and/or increased value and/or profits are insured hereunder are short-delivered or sold unidentifiable at the seaport of destination in consequence of perils insured against to pay a total loss on the additional insurance and/or increased value and/or profits on the part short-delivered or sold unidentifiable.

(b)   In the event of partial loss, The Assurer shall not be liable for a greater percentage of the amount insured than would be payable on the cargo itself if insured by This Assurer. This insurance is to be free of claim for General Average and/or Salvage and/or Special Charges except on the excess of Contributory Value over the original amount insured and only if uncollectible under the original insurance.

(c)   The valuation for this additional insurance to be the difference between the amount of the seller's insurance and the valuation as provided in Clause 8 of this Policy.

(d)   Regarding the additional insurance provided under this clause, the Policy is proof of interest. Full interest admitted, without benefit of salvage.

**71.   UNPAID VENDORS:**

This insurance is extended to cover the interest of The Assured, as a vendor in a credit transaction, on all shipments made by The Assured on terms under which The Assured is not obliged to furnish transit insurance.

This Assurer will guarantee to The Assured the prompt collection of losses, damages and expenses otherwise coming within the terms, conditions and warranties of this insurance in connection with shipments for which The Assured has not been paid. This Assurer will advance to The Assured the amount of the loss, damage or expense, as a loan without interest. Such advance shall be repayable upon, but subject to and only to the extent of (i) the receipt of the purchase price by The Assured, or (ii) any recovery received by The Assured from insurance effected by the buyer or otherwise.

It is agreed that the coverage provided under the terms of this Clause shall be subject to the applicable terms and conditions set forth elsewhere in this policy.

All goods and/or merchandise and/or property insured under this Clause shall be valued as per the valuation provisions set forth elsewhere in this policy.

The Assured agrees to not divulge the existence of the coverage provided by this Clause, and to use all reasonable means to collect the full amount due from the buyer or others, as the case may be.

72.   **SELLER'S INTEREST:**

Goods and/or merchandise and/or property sold by The Assured on F.O.B., F.A.S., Cost and Freight or similar terms whereby The Assured is not obligated to furnish transit insurance, will be covered under this policy, subject to all its terms and conditions, from the time the buyer fails or refuses to accept the goods and/or merchandise and/or property and/or the buyer cancels the contract prior to arrival of the shipments at final warehouse and/or The Assured exercises a lien on the goods and/or merchandise and/or property or interrupts their transit, or suspends the sale contract while the goods and/or merchandise and/or property are in transit when this is reasonable to safeguard his interest. Shipments insured under this clause will be valued at The Assured's selling price as per the contract of sale.

In any such cases this insurance will cover during delay and/or return of the goods or until they are otherwise disposed of.

The Assured agrees not to divulge the existence of the coverage to the buyer.

The Assured must use all reasonable and practical measures (including those which may be required by This Assurer) to prevent or minimize the loss and/or to enforce the sales contract.

73.   **SUBROGATION CLAUSE:**

It is agreed that upon payment of any loss, damage or expense, This Assurer is to be subrogated to all the rights of The Assured, to the extent of the payment made, against any carrier, bailee or other third party, which may be liable for the loss, damage or expense.

However, it is agreed that no right of subrogation, except through General Average, shall lie against any Assured named in this policy and/or a subsidiary and/or affiliated and/or associated company or any additional assured named herein; or against any vessel or craft or against any pipeline, on which cargo hereby insured is being carried or in respect of

which freight insured hereunder is at risk, belonging in part or in whole to or chartered by the Assured and/or a subsidiary and/or affiliated and/or associated company and/or an additional assured named herein.

This Assurer may not bring suit solely in The Assured's name without prior permission from The Assured, but if granted, always at This Assurer's expense.

Any recovery made by This Assurer in connection with a subrogated claim shall be shared with The Assured on a proportionate basis. The Assured's share shall be calculated by multiplying the gross recovery (after deducting only the actual expense of This Assurer to prosecute the claim) by the percentage obtained after dividing the sum of any deductible plus any uninsured loss, damage and expense by the sum of the deductible plus any uninsured loss, damage and expense plus the amount of loss, damage and expense paid by This Assurer. This Assurer retains the balance.

74.  **SUIT AGAINST ASSURER:**

This Assurer agrees that any action or proceeding against This Assurer for the recovery of any claim under or by virtue of this insurance shall not be barred if commenced within the time prescribed therefor in the Statutes of the State of New York.

75.  **CAPTIONS:**

The Captions to the Clauses set forth herein are for reference purposes only and shall not be deemed to form part of this policy.

76.  **SUPERSEDING CLAUSE:**

The terms, conditions and warranties contained in this manuscript policy shall override anything that is at variance, or inconsistent with or contradictory to the printed policy to which this manuscript policy may be attached.

77.  **REQUIRED BY LAW:**

Any provisions required by law to be stated in this policy by This Assurer are deemed to be stated herein.

78.  **SUBSTITUTION:**

Wherever the words "This Assurer" or "The Assurer" may appear in the policy they are deemed to include also the words "These Assurers".

79.  **SIGNATURE OF THIS ASSURER:**

In witness whereof, This Assurer has executed, issued and delivered this policy at New York, N.Y.

NYG MARINE INSURANCE COMPANY

AUTHORIZED SIGNATURE

## PREMIUM SCHEDULE

Effective with respect to shipments made on and after: **October 1, 2013**

Attached to and forming part of Policy Number: **OC 91524500**

of the: **AGCS Marine Insurance Company**

**ASSURED: World Fuel Services, Inc.**

**Coverage hereunder is subject to an Annual Minimum Deposit Premium of $1,100,000 (\*) payable annually,** however excluding Brazil which is separate and in addition to and as noted in details below. Premium is based on estimated gross revenues of USD $38,000,000,000 for the policy period and adjustable at expiry at a rate of 0.0029% applied to gross revenue for the policy period.

However, no adjustment shall apply in the event that the actual gross revenue for the policy period exceeds the foregoing estimate by more than 10%.

(\*) Includes Argentina and Canada  (Puerto Rico is covered under master policy) local policy premium however,NOT inclusive of taxes, fees, overrides and other legislatively required charges and are subject to adjustment if tariff rate required which are separate and in addition to the risk transfer premiums noted herein. Any additional local policies to be added are subject to premium to be agreed. Premiums for local policies to be invoiced and paid locally and collected by the Insured's network

In addition, EXCLUDES Brazil policy premium which is provided separately herein.

Should the Assured have any acquisitions during the term of the policy, exposure information is required to be submitted within 30 days of the closing of the purchase. Additional rate and premiums to be agreed.

**Brazil:**

Flat Premium: $350,000 Net

Brazil local net premium to be paid locally. Local premium to be grossed up for commission as well as local frictional charges, taxes, fees, overrides which are separate and in addition to.

**Florida Hurricane Catastrophe Fund Surcharge:** Additional Premium- $14,300
Surcharge of 1.3% for Florida Hurricane Catastrophe Fund, as mandated by the state of Florida.

**TRIA:** Additional Premium- $25,000

Countersigned at New York, N.Y.

This 1ˢᵗ day of October. 2013

AGCS MARINE INSURANCE COMPANY

AUTHORIZED SIGNATURE

Effective on and after: **October 1, 2013**

Attached to and forming part of Policy No. **OC 91524500**

Of the: **AGCS Marine Insurance Company**

Issued to: **World Fuel Services, Inc.**

**ENDORSEMENT NO 2013-1**

The following clauses form part of the above policy with effect from inception:

**AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
WITH U.S.A. ENDORSEMENT (March 1, 2003)**

**This clause shall be paramount and shall override anything contained in this insurance
inconsistent therewith.**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly
    caused by or contributed to by or arising from
    1.1   ionizing radiations from or contamination by radioactivity from any nuclear fuel
          or from any nuclear waste or from the combustion of nuclear fuel
    1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties
          of any nuclear installation, reactor or other nuclear assembly or nuclear
          component thereof
    1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other
          like reaction or radioactive force or matter.
    1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties
          of any radioactive matter. The exclusion in this sub-clause does not extend to
          radioactive isotopes, other than nuclear fuel, when such isotopes are being
          prepared, carried, stored, or used for commercial, agricultural, medical, scientific
          or other similar peaceful purposes.

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
(U.S.A. ENDORSEMENT)**
This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1,
2003) provided that if fire is an insured peril and where the subject matter insured or, in the case
of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its
islands, onshore territories or possessions

**and**

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2,
and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or
damage arising directly from that fire shall, subject to the provisions of this insurance
(reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by
nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly
from that fire.

29

**CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE (March 1, 2003)**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

**AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

AGCS MARINE INSURANCE COMPANY

*Allen Brosnan* 2/25/14

AUTHORIZED SIGNATURE

Effective with respect to shipments made on and after: **October 1, 2013**

Attached to and forming part of Policy No. **OC 91524500**

Of the: **AGCS Marine Insurance Company**

**ASSURED: World Fuel Services, Inc.**

**American Institute of Marine Underwriters**
Endorsement for Open Policies (Cargo)
Strikes, Riots & Civil Commotions (Form 12)
(January 1, 2008)

### S.R. &C. C. Endorsement (Form No. 12)

THIS INSURANCE ALSO COVERS:

(1)     Physical loss of or damage to property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions;

(2)     Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts; and,

(3)     Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional;
PROVIDED that any claim to be recoverable under this subsection (3) be not excluded by the Free of Capture & Seizure Warranty, Extended
Radioactive Contamination Exclusion Clause (Extended RACE Clause) or Chemical, Biological, Bio-Chemical and Electromagnetic Exclusion Clause
(CBE Clause) in the Policy to which this endorsement is attached. Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon
the property insured being in the ordinary course of transit and, in any event, **shall terminate:**

*(a)* As per the Warehouse to Warehouse Clause, Marine Extension Clause, 60 Day South American Clause and any other clauses relating to duration of
transit contained in or endorsed onto the Policy*; or,*

*(b)* on delivery to the consignee's or other final warehouse or place of storage at the destination named herein; or,

*(c)* on delivery to any warehouse or place of storage whether prior to or at the destination named herein, which the Assured elects to use either for
storage other than in the ordinary course of transit or for allocation or distribution; or,



*(d)* in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the property insured from the vessel at the port of discharge; or,

*(e)* in respect of air transits, on the expiry of 30 days after unloading the property insured from the aircraft at the place of discharge;

**whichever shall first occur.**

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

(a) change in temperature or humidity;
(b) the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;
(c) loss of market or loss, damage or deterioration arising from delay;
(d) hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or,
(e) nuclear reaction, radiation or radioactive contamination, as per Extended RACE Clause;
(f) chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material , as per CBE Clause.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefore at the rates established by the Assurer from time to time.

This endorsement may be canceled by either party upon forty-eight hours written, telegraphic, telefaxed, or electronic notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

AGCS MARINE INSURANCE COMPANY
AUTHORIZED SIGNATURE

**WAR RISK ONLY OPEN POLICY (CARGO) OCW 91524500**
**(December 2, 1993)**

THIS POLICY OF INSURANCE WITNESSETH, that in consideration of premiums as agreed to be paid, the Assurer does make insurance and cause **World Fuel Services, Inc.** (and/or shipper) to be insured, lost or not lost, for account of whom it may concern, against War Risks only, in accordance with the terms and conditions hereinafter set forth.

To apply to shipments made on or after **October 1, 2013**

This Company shall not be liable hereunder for more than **$50,000,000** any one vessel or Aircraft.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Assurer full value(s) at risk and to pay premium thereon at the agreed rates. The Assured further agrees that acceptance of such reports and premium by the Assurer shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Assurer in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 4 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place by another overseas Vessel, and/or on the on-carrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one vessel) provided written notice be given to this Assurer as soon as known to the Assured.

This Policy shall cover only those shipments which are insured against marine risks under **Policy No. OC 91524500 of AGCS Marine Insurance Company**, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said Policy against marine risks shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

Any loss payable hereunder shall be payable in funds current in the United States, to the order of the **Assured** thirty days after full proofs of loss and proofs of interest have been filed with the Assurer.



1.   (a)   This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes.  Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

(b)   This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

2.   Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

3.   This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following, whether due to a peril insured against or otherwise:

(a)   commandeering, preemption, requisition or nationalization by the government defacto or otherwise) of the country to or from which the goods are insured.
(b)   Seizure or destruction under quarantine, environmental or customs regulations.
(c)   Delay, deterioration and/or loss of market.
(d)   Nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

4.   (a)   The insurance against the risks enumerated in clause I, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof:

(i) prior to being on board an overseas Vessel (For the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel);

(ii) after being discharged overside from an overseas Vessel at the intended port or place of discharge,

or

after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur;

(iii) after expiry of 15 days from midnight of the day of arrival of the overseas vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying

34

overseas Vessel.  During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

(iv)For the purpose of this Clause 4 arrival at the intended port of place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

(b)    The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

(c)    If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4

(d)    Shipments by mail, if covered by this Policy are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

(e)    Shipments by air (other than by air mail) if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

(f)    It is a condition of this is insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

(g)    If anything contained in this Policy shall be inconsistent with this Clause 4 it shall to the extent of such inconsistency be null and void.

5.    This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage provided the same be communicated to the Assurer as soon as known to the Assured an additional premium paid if required.

6.    And in the case of any loss or misfortune, it shall be lawful and necessary to and for the assured his or their factors, servants and assigns, sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Assurers, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said Assurers will contribute according to the rate and quantity of the sum hereby insured.

7.    General Average and Salvage Charges payable according to United States laws and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8.    It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premium on all shipments insured under this Policy at the war risk rates of the Assurer as fixed from time to time.



9.      No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

10.     No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

11.     It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

12.     This insurance may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof prior to the effective date of such notice.  Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4, at the rates of the Assurer, provided that, prior to said effective date, such shipments were at the risk of the Assured and were covered under the said Policy against marine risks.

In the event of loss which may give rise to a claim under this Policy, prompt notice shall be given to this Assurer.

Any provisions required by law to be stated in policies issued by this Assurer shall be deemed to have been stated herein.

In the event that this policy is subscribed to by several Assurers, it is agreed that, upon request the Assurers will issue separate policies covering their subscription.


In WITNESS WHEREOF, this Assurer has executed these presents at New York, N.Y.

this 1st day of October, 2013


**Policy Number OCW 91524500 of the AGCS Marine Insurance Company**

AGCS MARINE INSURANCE COMPANY

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

Effective with respect to shipments made on and after: **October 1, 2013**

Attached to and forming part of Policy Number: **OC 91524500**

Of the: **AGCS Marine Insurance Company**

ASSURED: **World Fuel Services, Inc.**

**ENDORSEMENT NO 2013- 2**

**<u>PROFIT SHARING</u>**

The Assured shall participate in profits, if any, on the following basis:

1.  Net annual premiums less return premiums, if any, recorded by these Assurers during the underwriting year.

2.  Less 30% of the net premium (excluding local policy premiums/taxes, TRIA, War, S.R. & C.C. premiums)and less all paid and outstanding losses including loss expenses and/or survey fees at the end of the year per underwriter's records.

3.  The Assured shall participate to the extent of 50% of the balance of 1 and 2 above.

4.  Premiums, losses and recoveries as recorded by the company shall be accepted by the Assured for the purposes of profit sharing calculations.

5.  Six (6) months following the end of each underwriting year, calculation shall be prepared at which time the **full** amount of profit sharing due the Assured shall be paid.

6.  If there is a deficit from one underwriting year, that deficit shall be carried to the following policy year and the next year but in no event beyond the second policy year.

7.  It is agreed that no profit sharing return shall be paid for any year during which cancellation is effected at the Assured's request, whether mid term or at policy anniversary.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

AGCS MARINE INSURANCE COMPANY

AUTHORIZED SIGNATURE

Effective with respect to shipments made on and after: **October 1, 2013**

Attached to and forming part of Policy Number: **OC 91524500**

Of the: **AGCS Marine Insurance Company**

**ASSURED: World Fuel Services, Inc.**

### ENDORSEMENT NO 2013- 3

### LOCAL POLICY WRAP -AROUND CLAUSE

This Policy is extended to cover the difference in any and all limits and conditions between those provided by this Policy and those provided by any locally written admitted policies issued on behalf of an entity insured hereunder for legal or other purposes to comply with local regulations. Under this Policy, the Assured is to be reimbursed to the extent of the difference between the amount recoverable or due from aforesaid local Policy and the amount recoverable hereunder, because of a difference in perils, definitions, conditions, and/or limits of liability but not exceeding the limit of liability hereunder.

**Any claims covered under a Difference In Conditions and/or Difference In Limits shall be payable to the Assured's headquarters in the USA unless local law permits a local payment.**

AGCS MARINE INSURANCE COMPANY

AUTHORIZED SIGNATURE

Effective with respect to shipments made on and after: **October 1, 2013**

Attached to and forming part of Policy Number: **OC 91524500**

of the: **AGCS Marine Insurance Company**

ASSURED: **World Fuel Services, Inc.**

### ENDORSEMENT NO 2013- 4

### BRAZIL Local Policy
**The following represents only a summary of exposures -For agreed policy terms and conditions, please refer to the local policy issued.**

Brazil local net premium to be paid locally. Local premium to be grossed up for commission as well as local frictional charges, taxes, fees, overrides which are separate and in addition to the following limits of liability:

| | |
|---|---|
| **$2,500,000** | Import/Export |
| **$ 250,000** | Overland Transit per truck |
| **$5,000,000** | per NAMED temporary storage locations <u>as noted below</u> (*) |

(*)Any additional locations to be advised and premium to be charged if deemed necessary.

| Locations | Address | City | Volume | Value USD |
|---|---|---|---|---|
| MARINE refers to product intended for the maritime industry which may be stored in port terminals. | | | | |
| Ipanema Barge | Avenida Feliciano Sodré nº 215 – Niterói – Rio de Janeiro | Rio de Janeiro | 874 | $ 940,406 |
| TWB Barge | Avenida Feliciano Sodré nº 215 – Niterói – Rio de Janeiro | Rio de Janeiro | 267 | $ 288,795 |
| Sao Miguel Barge | Avenida Feliciano Sodré nº 215 – Niterói – Rio de Janeiro | Rio de Janeiro | 267 | $ 288,795 |
| | | | MARINE BRAZIL TIV | $ 1,517,997 |

| Location | Address | City | Volume | VALUE $USD |
|---|---|---|---|---|
| LAND refers to product stored on land that is principally for trucking and other land based conveyances. | | | | |
| PETROSUL-SP | Av. SIDNEY CARDON DE OLIVEIRA, 1723  CASCATA - PAULINIA | SÃO PAULO | 2,939,999 | 2,220,054 |
| COPAPE-SP | RUA MADRI, 121 - - SALA 01 JARDIM ARAPONGA - GUARULHOS | SÃO PAULO | 2,128,951 | 2,116,289 |
| RUFF-SP | AVENIDA ERNESTO IGEL-3714-BONFIM-PAULINIA | SÃO PAULO | 1,112,882 | 1,070,387 |
| DIRECIONAL - RJ | AVENIDA MONROE, VILA ACTURA DUQUE DE CAXIAS | RIO DE JANEIRO | 1,089,201 | 925,528 |
| PANDENOR - PE | AV PORTUARIA, 69 - IPOJUCA | PERNAMBUCO | 857,643 | 817,388 |
| OILTANKING - ES | AV VALE DO RIO DOCE - VILA VELHA | VITÓRIA | 746,685 | 666,708 |
| CARBOPETRO-SP | ESTRADA GUARULHOS/SAO MIGUEL ,301 - JARDIM LEBLON | SÃO PAULO | 653,909 | 590,106 |
| ALE - RJ | AVENIDA MONROE, 810, VILA ACTURA DUQUE DE CAXIAS | RIO DE JANEIRO | 613,717 | 564,370 |
| ALESAT-SP | ESTRADA VELHA DE GUARULHOS, 36, PIMENTAS GUARULHOS | SÃO PAULO | 347,624 | 320,825 |
| TOTAL - LF | VIA MADRE DEUS, S/N, KM 42,5 SÃO FRANCISCO DO CONDE | BAHIA | 203,301 | 197,907 |
| TEQUIMAR | VIA MATOIM, S/N, PORTO DE ARATU-CANDEIAS | BAHIA | 218,838 | 190,166 |
| TECAB - PB | R. PRES. JOAO PESSOA | PARAIBA | 184,140 | 125,042 |
| DEMOCRATICO - BA | Av. Comendador Firmino Alves, 60, 8º andar, Sala 802 | BAHIA | 69,447 | 60,452 |
| SÃO JOSE DOS CAMPOS - SP | Rua Gregório Gurevich, 260 | SÃO PAULO | 80,753 | 48,555 |
| BAGUAR-SP | AV. ORLANDA BÉRGAMO , S/N GUARULHOS | SÃO PAULO | 48,781 | 29,331 |
| REDEPETRO-SP | Rodovia Alexandre Balbo – SP 328 – S/Nº - KM 327 | SÃO PAULO | 42,979 | 25,843 |
| | | | LAND BRAZIL TIV | $9,968,952 |



Assured agrees to accept "good local standard" wording with the following amendments:

- No waiver of subrogation for these 3rd party locations
- Sublimits and deductibles for fire - USD $1,000,000 per occurrence fire sublimit with a deductible of BRL 100,000 (est USD$50,000)
- Including review clause if loss ratio is over 60%
- Require Surveys on locations with high exposure - TBA
- 15% of retention to AGCS Re Brazil

<u>Brazil premium and terms and conditions are based on underwriting information</u> as noted below. Variance to be reported immediately to this Company and we reserve the right to amend quote if deemed necessary:

- No Inventory or transit losses
- Import/Export policy  - USD $20 million in turnover
- Inland transit Policy- USD $1billion in turnover

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

AGCS MARINE INSURANCE COMPANY

AUTHORIZED SIGNATURE

Effective with respect to shipments made on and after: **October 1, 2013**

Attached to and forming part of Policy Number: **OC 91524500**

Of the: **AGCS Marine Insurance Company**

**ASSURED: World Fuel Services, Inc.**

### WAREHOUSE/PROCESSING ENDORSEMENT NO 2013- 5

In consideration of the policy premium as charged, the policy to which this endorsement is attached is extended to cover goods and/or merchandise and/or property (i) of The Assured or (ii) held by it in trust or on commission or on consignment or sold but not delivered or removed or on joint account with or belonging to others for which The Assured may be liable in the event of loss pending shipment, transshipment, reshipment or otherwise, while at storage and or processing locations, subject to the following terms and conditions:

**The goods and/or merchandise and/or property are insured against All risks of physical loss or damage from any external cause, except those risks as may be excluded by the F.C.& S. warranty, S.R.&C.C. warranty**

**Deductibles:**
    **0.5%** of the insured values of the goods (**subject to a MINIMUM of $100,000**) in storage at the time of loss

    **Flood,**
    **Windstorm, &**
    **Earthquake:**   **2.5%** of the insured value of the goods in storage at the time of loss subject to a minimum deductible of **$250,000** per occurrence

However, these deductible shall not apply to (i) survey fees, (ii) general average, salvage or special charges, (iii) loss, damage or expense covered under the Sue and Labor or Debris Removal clauses, or the SRCC endorsement.

This Assurer is also to pay for any expense resulting from an Explosion Peril or Shore Perils as identified elsewhere in the policy.

This deductible shall not be applied so as to reduce This Assurer's obligation to pay the full amount of any limit(s) of liability set forth within this policy.

Notwithstanding anything contained herein to the contrary, it is especially understood and agreed that this extended coverage includes those risks which are covered by the Strikes, Riots and Civil Commotions Endorsement contained elsewhere in this policy.

**Valuation: Goods and/or merchandise and/or property shall be valued as per Marine Policy to which this Endorsement is attached.**

41

**Limits of Liability:**
$25,000,000 each location on file with underwriters, with the exception of the following location:

**Lake Charles, LA**       Limit: $40,000, 000

$5,000,000(*) each unnamed location worldwide (excluding all Brazil locations unless noted on the schedule in local Brazil policy);

however no more than **$2,500,000 per occurrence and in the Annual Aggregate (Unnamed locations)** for the perils of Earthquake Shock, Flood and Windstorm COMBINED as defined herein .

(*) Furthermore, it is hereby understood and agreed that this company shall be liable for up to $5,000,000 per unnamed storage locations for a period of up to 60 days. Within the 60day period the Assured shall advise the company of the new location and the values at risk as said locations. If not reported within the 60 day period, the limit at said unnamed location shall be reduced to $2,500,000.

**Flood Sublimit and aggregate:**
In no event shall the underwriters herein be liable for more than **$25,000,000** any one occurrence (as defined below) and in the annual aggregate as respects losses/Claims from Flood.

**Windstorm Sublimit and aggregate:**
In no event shall the underwriters herein be liable for more than **$25,000,000** any one occurrence (as defined below) and in the annual aggregate as respects losses/Claims from Windstorm.

**Earthquake Sublimit and aggregate:**
In no event shall the underwriters herein be liable for more than **$25,000,000** any one occurrence (as defined below) and in the annual aggregate as respects losses/Claims from Earthquake

**Note:** Locations with limits above $25,000,000 shall be named and scheduled to the policy. It is understood by all parties concerned that the location limit applies to the total number of storage tanks and their combined values in any one location or refinery.

## DEFINITIONS

**Windstorm:**
Named Storm is defined as weather or atmospheric condition that has been declared as a hurricane, typhoon, tropical storm or cyclone by the U.S. National Weather Service, World Meteorological Organization, Australia Bureau of Meteorology, Philippine Atmospheric, Geophysical & Astronomical Services Administration, the Seychelles Meteorological Services or a similar weather organization.

Damage directly caused by or resulting from a Named Storm shall, for all purposes, include but not be limited to any associated physical force (to the extent insured under this policy) whether described as wind, hail, lighting, tornado, rain or water (whether driven by wind or not), Flood, tidal wave, wind driven objects or debris.

**Occurrence:**
The physical source of Damage to Insured Property, regardless whether it creates more than one Insured Cause of Loss.  One occurrence is the aggregate amount of all fully adjusted claims



covered under this policy that arise from that physical source. In establishing the amount of the deductible, limit or sublimit to be applied for an Occurrence, the following shall apply:

An Occurrence for Name Storm or Windstorm is the sum total of all Damage and Time Element loss insured hereunder arising out of or caused by the same atmospheric disturbance during any period of seventy-two (72) consecutive hours;

**Flood:**
A temporary condition of partial or complete inundation of normally dry land areas from any of the following:

> The overflow of inland or tidal waters;
> The unusual and rapid accumulation or runoff of surface waters from any source;
> Wave action, force of water (whether wind driven or not), storm surge, Named Storm, tsunami or the release of impounded water;
> The failure, overtopping, or breach of any structured designed to hold any body of water, river or stream.

If Named Storm or Earth Movement are excluded by this Policy, then Flood caused by any of the above items that is associated with or related in any way to Named Storm or Earth Movement, respectively, is excluded.

**Occurrence:**
The physical source of Damage to Insured Property, regardless whether it creates more than one Insured Cause of Loss. One occurrence is the aggregate amount of all fully adjusted claims covered under this policy that arise from that physical source. In establishing the amount of the deductible, limit or sublimit to be applied for an Occurrence, the following shall apply:

An Occurrence for Flood is the sum total of all Damage insured hereunder sustained during any period of seventy- two (72) consecutive hours by reason of flood.

**Earthquake:**
Earth movement, including but not limited to earthquake, landslide, mud flow, earth sinking, earth rising or shifting, or loss or damage caused directly or indirectly by any ensuring peril or perils, with the exception of ensuing fire or explosion.

**Occurrence:**
The physical source of Damage to Insured Property, regardless whether it creates more than one Insured Cause of Loss. One occurrence is the aggregate amount of all fully adjusted claims covered under this policy that arise from that physical source. In establishing the amount of the deductible, limit or sublimit to be applied for an Occurrence, the following shall apply:

An Occurrence for Earth Movement means the sum total of all Damage and Time Element Losses insured hereunder during any period of seventy –two (72) consecutive hours by reason of Earth Movement.

The limit(s) of liability of This Assurer with respect to the coverage provided through this endorsement and as set forth above shall be separate from and in addition to any other limit(s) of liability found elsewhere in the policy.

43

Notwithstanding anything contained elsewhere herein to the contrary, this policy shall not pay for loss of or damage to the goods and merchandise while covered under this endorsement caused by or resulting from:

    a.   The actual processing or manufacturing of the property insured

    b.   Unexplained or mysterious disappearance, or loss or shortage disclosed upon taking inventory where there is no evidence that the loss was occasioned by perils specifically insured against. **This exclusion only applies to stock at locations owned and operated by the Assured.**

    c.   Misappropriation, secretion, conversion, infidelity or any dishonest act done by or at the instigation of the Assured at any time during the currency of this coverage, or by the Assured or other party of interest, his or their employees or agents while insured merchandise is stored in warehouses or stores, owned leased or controlled by the Assured.

The Assured shall have the privilege of placing specific insurance when necessary to protect any excess value above the limits of liability agreed to herein, or as may be agreed upon hereafter by This Assurer, and to take credit for such specific insurance and/or specific insurance effected by others or in force under other marine policies, until termination of such specific insurance.

If the total value at risk at any one location exceeds the limit of liability specified herein for that location, The Assured shall nevertheless report the full amount at risk at such location in consideration of which the principle of co-insurance is waived by This Assurer and The Assured agrees to pay the full policy rate on the value at risk at that location, up to and including the specified limit of liability for that location. This Assurer shall be liable for the full amount of any loss up to, but not exceeding, the limit of liability for the applicable location.

No inadvertent error or omission, or failure to make, valuation reports shall prejudice the Assured's right of recovery, but same shall be corrected as soon as practicable after it is discovered.

 

        **ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**